IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

_____
                                   )
MAKSIM TSVETOVAT, et al.,       )
                                   )
       Plaintiffs,           )
                                   )
v.                                ) CIVIL ACTION NO. 1:12CV510 TSE
                                   )
SEGAN, MASON & MASON, P.C.,   )
                                   )
       Defendant.         )
_____)

## SEGAN MASON'S MEMORANDUM IN SUPPORT OF ITS
## MOTION FOR JUDGMENT ON THE PLEADINGS

Defendant Segan, Mason & Mason, P.C. ("Segan"), by counsel, and pursuant to Fed. R.

Civ. P. 12(c), states as follows for its Memorandum in Support of its Motion for Judgment on the

Pleadings:

### I.      MATERIAL FACTS

**A.    The Tsvetovats.**

    **1.    Segan files two warrant-in-debt actions against the Tsvetovats and obtains
        judgments.**

Plaintiffs Maksim and Tatyana Tsvetovat (collectively "the Tsvetovats") were unit

owners and members of the Unit Owners Association of Renaissance 2230, A Condominium

("Renaissance").  As members of Renaissance, and in accordance with its by-laws, the

Tsvetovats were required to pay assessments for the general upkeep of the community.  (See

Compl., Ex. A at Art. VI, § 2.)  If they failed to comply with this requirement, the by-laws made

clear the Association could initiate legal proceedings to collect the sums due.  "The Board of

Directors **shall** take prompt action to collect" any unpaid Common Expenses "that remain unpaid

for more than thirty days from the date due for payment."  (Id. Art. VI, § 4 & X.)  Renaissance's

by-laws conferred on the Association the power to impose a late fee of $70.00 per month for

each monthly assessment in arrears.  (Compl. Ex. B at II.A.)  Further, when a Unit Owner failed

to pay any portion of Renaissance's assessments, the Association and its retained legal counsel

were entitled to automatically accelerate

> the entire balance of the assessments for the remainder of the fiscal year . . . and
> declare[] [those assessments] due in full; a memorandum of lien for unpaid
> condominium assessments in the accelerated amount shall be recorded against the
> title to the Unit and a civil action for judgment shall be brought against the Unit
> Owner for unpaid assessments, interest, late fees, attorney's fees and costs.

(Compl., Ex. B at II.D.2.)  In legal proceedings arising out of a Unit Owner's alleged default,

"the prevailing party shall be entitled to recover the costs of the proceeding and such reasonable

attorneys' fees as may be determined by the Court."  (Compl. Ex. A, Art. X, § 1(c).)  Interest at

the rate of 18% per year would accrue "on the principal amount unpaid from the date due until

paid."  (Id. Art. X, § 1(e).)

　　　　After the Tsvetovats failed to pay certain required assessments, the Renaissance

Association referred the matter to Segan.  On July 23, 2010, Segan filed a warrant in debt action

against the Tsvetovats in Fairfax County General District Court, using "Form DC-402" found on

the web site for Virginia's Judicial System.[1]  (See Compl. ¶ 12.)  On the form, Segan pleaded:

> Plaintiff(s) claim that Defendant(s) owe Plaintiff(s) a debt in the sum of $4,286.38
> net of any credits, with interest at 18% from date of 7/20/2010 until paid, $70.00
> costs and $ reasonable attorney's fees with the basis of this claim being . . . [X]
> Other (Explain) Nonpayment of assessments as set forth in the attached schedule
> of account.

(Def.'s Ex. 1.)[2]  Segan also attached an "Affidavit of Account" in which it certified the

Tsvetovats owed the amounts claimed in the warrant in debt.  Also attached to that Warrant in

---

[1] The form can be found at http://www.courts.state.va.us/forms/district/dc402.pdf.
[2] The court may take judicial notice of Defendant's Exhibit 1 (and other exhibits attached to this Motion)
because the July 23, 2010 lawsuit, although not attached, is explicitly referred to and relied upon in the

Debt was a ledger prepared by Renaissance's management and an "Adjustments to Management Ledger" that accelerated the remaining installments for that fiscal year.  At the return date for the warrant in debt, Segan filed with the court an updated "Adjustments to Management Ledger" that reflected the Tsvetovats made a payment of $487.55 towards the outstanding debt.  (Id. at 8.)  Thus, the amount Segan sought in the suit was adjusted to $3,798.83.  (Id.)  The Tsvetovats did not appear before the court to contest the validity of the warrant in debt.

On September 14, 2010, the court entered default judgment against the Tsvetovats, awarding the principal amount of $3,798.83, plus costs of $70.00, attorney's fees of $716.00, and interest of 18% per annum from July 20, 2010 until satisfaction of the judgment (the "September 2010 Judgment").  (Compl. ¶ 13; Def.'s Ex. 2.)  After the court entered judgment, Segan commenced a garnishment action to collect the judgment.  (Compl. ¶¶ 14-15.)  In the garnishment action, in addition to the judgment amount approved by the court, and in a form mandated by Va. Code § 8.01-512.3, and authorized by § 8.01-475 and Renaissance's governing documents, Segan made a claim for "garnishment costs" in the amount of $94.00.  (Compl. ¶ 15; Ex. 2A.)  The Tsvetovats never challenged the legality of imposing garnishment costs with the Virginia court under whose authority the garnishment proceedings commenced.  Payment was received pursuant to the garnishment from the garnishee and the garnishment was ended.

On June 1, 2011, Segan filed another warrant in debt action against the Tsvetovats in Fairfax County General District Court to collect delinquent assessment fees.  (Compl. ¶ 17; Def.'s Ex. 3.)  Segan again used the standard Form DC-402.  Following the language of the form, and pursuant to the terms of Renaissance's by-laws and Policy Resolution, Segan pleaded that the Tsvetovats owed the principal amount of $6,340.60 at the interest rate of 18% from April

---

Complaint.  See Fed. R. Civ. P. 10(c); Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); see also Am. Chiropractic v. Trigon Healthcare, 367 F.3d 212, 234 (4th Cir. 2004).

18, 2011 until paid, plus $70.00 in costs and "reasonable attorneys' fees."  (Def.'s Ex. 3 at 1.)

Again, the Tsvetovats did not answer or assert any defense to the lawsuit.

On July 27, 2011, the court entered a default judgment in favor of Renaissance and

against the Tsvetovats in the amount of $6,340.60, plus interest accruing at the rate of 18% from

the date of the lawsuit until paid, $70.00 in costs, and an additional 20% for attorneys' fees (the

"July 2011 Judgment") (Compl. ¶ 18; Def.'s Ex. 4.)  Following entry of the judgment, Segan

filed with the court a garnishment summons in which it claimed "garnishment costs" in the

amount of $94.00, pursuant to the form mandated  by Va. Code § 8.01-512.3, and as authorized

by § 8.01-475 and the governing documents of Renaissance.  (Compl. ¶ 19; Ex. 4A.) Payment

was received pursuant to the garnishment from the garnishee and the garnishment was ended.

> **2.      Segan sends collection letters to the Tsvetovats to collect judgment and other
> delinquent assessment amounts.**

On March 7, 2011, Segan sent a letter to the Tsvetovats informing them they were

delinquent in paying assessments they owed for the period of January 1, 2011 through March 7,

2011.  (Def.'s Ex. 5.)  The letter provided that the Tsvetovats owed Renaissance $1,602.65 in

assessments, late fees and interest, and further asserted that Renaissance held a **claim** for

attorney fees and costs of $136.42.  The total amount claimed was $1,739.07.  (Id.)

Following entry of the September 2010 and July 2011 Judgments, Segan, on January 24,

2012, sent the Tsvetovats a letter regarding the status of their account.  (Compl. ¶ 9 & Ex. D; see

also Def.'s Ex. 6.)[3]  It noted that Segan had received payments from the Tsvetovats sufficient to

satisfy the September 2010 Judgment.  It further noted that to satisfy the July 2011 Judgment, the

Tsvetovats owed $6,114.45, after including the legal fees, costs and interest as awarded by the

---

[3] Exhibit D attached to the Complaint is difficult to read so in an effort to make the record clear, Segan
has attached a copy of the January 24, 2012 letter as Exhibit 6 to its Motion.

Court and crediting all payments made at the time of the letter.  In addition, it stated that the

January 1, 2012 assessment of $502.18 and a late fee of $70.00 had also come due.  (Def. Ex. 6.)

On March 12, 2012, Segan sent the Tsvetovats another letter, this time regarding

delinquent assessments for January through March 2012.  (Compl. ¶ 9; Def.'s Ex. 7.)  The letter

provided that the Tsvetovats owed $1,782.96, representing $1,646.54 in assessments, late fees

and accrued interest, and a **claim** of $136.42 in attorney fees.  The "Statement of Account"

attached to the letter made it crystal clear that interest had not been factored in to any of the

amounts allegedly due and owing, that the statement consisted solely of the unpaid assessments

and late fees in accordance with Renaissance's by-laws, and that attorneys' fees were "claimed."

**B.      Christopher Lee Pritchard**

      **1.      Segan brings warrant-in-debt actions against Pritchard and obtains
        judgments against him.**

Plaintiff Pritchard was a unit owner and member of the Unit Owners Association of

Wilton House Condominium ("Wilton House").  (See Compl. ¶ 25.) As a member of Wilton

House, and in accordance with its by-laws, Pritchard was required to pay certain assessments for

general upkeep of the community property.  In the event Pritchard failed to pay the required

assessments, Wilton House was authorized to initiate legal proceedings against him: "The Board

of Directors **shall** take prompt action to collect" any unpaid Common Expenses that "remain

unpaid for thirty days."  (See Compl., Ex. C. at Art. VI, § 4, Art. X.)  The by-laws also conferred

on the Association the power to impose a late charge of $25.00 for unpaid monthly assessments.

(Id. Art. X, § 1(g); Def.'s Ex. 8.)[4]  Further, when a Unit Owner failed to pay any portion of

---

[4] Article X, Section 1(g) of the Wilton House by-laws attached as Ex. C to the Complaint originally
imposed a late charge of "not less than $10.00 per month for each monthly assessment in arrears."  The
by-laws were amended in August 2006 by duly enacted Policy Resolution No. 1, Assessment and
Collection.  Policy Resolution No. 1 raised the late fee to $25.00 per month.  (See Ex. 8 at Art. II.A.)

Wilton House's assessments, the Association and its retained legal counsel were entitled to automatically accelerate "the entire balance of the assessments for the remainder of the fiscal year . . . and declare[] [those assessments] due in full." (Def.'s Ex. 8 at II.D.)  A

> memorandum of lien for unpaid condominium assessments in the accelerated amount shall be recorded against the title to the Unit and a civil action for judgment shall be brought against the Unit Owner for unpaid assessments, interest, late fees, attorney's fees and costs.

(Id.)

The Wilton House by-laws also provide that "[i]n any proceeding arising out of any alleged default by a Unit Owner, the prevailing party shall be entitled to recover the costs of the proceeding and such reasonable attorneys' fees as may be determined by the Court."  (Compl. Ex. C at Art. X, § 1(c).)  Unlike the Renaissance by-laws, "In the event of a default by any Unit Owner in paying any sum assessed against the Condominium Unit **other than for Common Expenses**," interest at a rate of up to eighteen percent (18%) per annum" could be imposed.  (Id. Art. X, § (e).)  As the amounts being sued for from Pritchard were Common Expenses, the only interest prayed for was the judgment rate of interest (6%) from the date of judgment in accordance with Va. Code § 6.2-302.

Pritchard failed to pay certain assessments and so Segan, on behalf of Wilton House, brought suit to collect the amounts due.  On or about September 10, 2008, Segan filed a warrant in debt action against Pritchard in Fairfax County General District Court, using the same form as used in the Tsvetovat actions—Form DC-402.  (Compl. ¶ 27.)  In the suit, Segan sought $7,410.00 in unpaid principal, plus judgment interest at 6% from date of judgment, $53.00 in court costs, and "reasonable attorney's fees."  (Def.'s Ex. 9.)  That lawsuit was nonsuited after Pritchard filed for bankruptcy and had his debts discharged.

6

In mid-September 2009, Segan brought another warrant-in-debt action for $9,350.00 in unpaid principal, plus judgment interest at 6% interest from date of judgment, $53.00 in costs and "reasonable attorney's fees." (Compl. ¶ 28; Def.'s Ex. 10.) Pritchard appeared at the return date to contest the matter, and the court ordered Pritchard to file responsive pleadings. When he failed to respond, on January 6, 2010, the court entered judgment in Segan's favor for $9,350.00 with judgment interest of 6% interest from the date of judgment, attorneys' fees of 20% and court costs of $53.00. (Compl. ¶29; Def.'s Ex. 11.)

Following entry of the January 2010 Judgment, Segan brought two additional warrant-in-debt actions against Pritchard for unpaid assessments. On November 19, 2010, Segan brought suit seeking $1,730.00 in unpaid principal, plus judgment interest at 6% interest from the date of judgment, $58.00 in court costs, and "reasonable attorney's fees." (Compl. ¶ 30; Def.'s Ex. 12.) Pritchard did not defend the lawsuit and on January 5, 2011, the court entered a default judgment against him. The judgment included $456.00 in attorneys' fees and $58.00 in court costs. (Compl. ¶ 31; Def.'s Ex. 13.)

On May 10, 2011, Segan filed a final warrant-in-debt against Pritchard claiming $5,454.00 in unpaid principal, plus judgment interest at 6% interest from date of judgment, $58.00 in court costs, and "reasonable attorney's fees." (Compl. ¶ 32; Def.'s Ex. 14.) Again, Pritchard appeared at the return date and the court ordered him to file responsive pleadings. When he failed to respond, the court entered judgment that included attorney's fees of $891.42 and court costs of $58.00. (Compl. ¶ 33; Def.'s Ex. 15.)

After obtaining the judgments against Pritchard, Segan filed two garnishment proceedings, on November 19, 2010 and November 14, 2011, respectively, to collect the judgments. (Compl. ¶¶ 34–35.) In the garnishment actions, in addition to the judgment amount

approved by the court, and as in a form mandated by Va. Code § 8.01-512.3, and as authorized by § 8.01-475 and the governing documents of Wilton House, Segan made claims for "garnishment costs." (See Def.'s Ex. 16.) Pritchard never challenged the legality of Segan's claims for garnishment costs with the Virginia court under whose authority the garnishment proceedings commenced. Payment was received pursuant to both garnishments from the garnishee and the garnishments ended. The underlying judgments have not yet been satisfied.

### 2. Segan Sends Collection Letters to Pritchard to Collect Judgments and Other Delinquent Assessment Amounts.

From 2008 to 2012, Segan sent Pritchard numerous collection letters because of his failure to pay the judgments entered against him, as well as additional assessments that had come due. According to the Complaint, these letters were sent on June 4, 2008, September 8, 2008, September 11, 2008, November 25, 2008, December 3, 2008, December 6, 2008, June 8, 2009, September 8, 2009, December 10, 2009, July 20, 2010, October 26, 2010, August 22, 2011, February 13, 2012, and March 22, 2012. (Compl. ¶ 25.) Because all but the August 22, 2011 and February 13 and March 22, 2012 letters are time-barred, only the timely letters are addressed.

The August 22, 2011 letter was simply a response to Pritchard's request for a statement of account, and merely summarized his outstanding balance. (Def.'s Ex. 17.) The February 13, 2012 letter states that Pritchard owed Wilton House $1,059.42, which included $923.00 in past due assessments, late fees and accrued interest. The letter also made a **claim** for $136.42 in legal fees and costs. (Compl. ¶ 25; Def.'s Ex. 18.) The Statement of Account attached to the February letter makes clear that interest had not been factored in to any of the amounts due and owing, and that the statement consisted solely of the unpaid assessments and late fees. The March 22, 2012 letter was sent to Pritchard after he requested a breakdown of his account. (Def.'s Ex. 19.)

C.      **The Class Action Complaint.**

The purported Class Action Complaint alleges Segan violated the FDCPA by sending

letters and other communications that contained false and deceptive statements.  (Compl. ¶¶ 11,

26.)  The nine alleged misrepresentations contend that Segan: a) misrepresented that the

Plaintiffs were liable for attorneys' fees that had not been awarded by a court; b) misrepresented

the amount of interest due because it purported to assess interest on late fees, and attorneys' fees;

c) misrepresented the interest rate because it claimed an amount of interest (18%) that was

beyond what was permitted under Virginia law; d) misrepresented the computation of interest

because it computed the interest prior to crediting any payments by owners; e) demanded

payment of interest that was not due;[5] f) misrepresented that the Tsvetovats were liable for late

fees that exceeded $50 per month;[6] g) misrepresented that it could file a memorandum of lien

against the property to secure debts other than late assessments in violation of Virginia law; h)

misrepresented the Plaintiffs were liable for garnishment costs; and i) utilized an unlawful

method of crediting payments.[7]

Three purported sub-classes comprising Plaintiffs' proposed class correspond to the types

of documents Segan used in its collection activities – a "letter class," a "lawsuit class" and a

"garnishment class."  (Compl. ¶¶ 39–41.)  The instant motion only addresses the plausibility of

Plaintiffs' allegations.  It does not address whether this action is appropriate for class

certification as Plaintiffs have not moved to have the class certified.

## II.      <u>STANDARD OF REVIEW</u>

Pursuant Rule 12(c), Fed. R. Civ. P., a party can move for judgment on the pleadings

"after the pleadings are closed—but early enough not to delay trial."  The pleadings are

---

[5] This claim is only asserted on behalf of the Tsvetovats.
[6] This claim is only asserted on behalf of the Tsvetovats.
[7] This claim is only asserted on behalf of the Tsvetovats.

considered closed "upon the filing of a complaint and answer." Va. Imports, Inc. v. Kirin Brewery of Am., LLC, 296 F. Supp. 2d 691, 695 (E.D. Va. 2003).  A Rule 12(c) motion is evaluated under the same standard as a Rule 12(b)(6) motion.  See Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999).  Thus, while a complaint need not contain "detailed factual allegations," it must contain more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).  A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Id. at 678.  "Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." Id. (citation omitted).

### III.   ANALYSIS

#### A.   Most of the Letters, Lawsuits, Garnishments and Liens Upon Which Plaintiffs Premise Their FDCPA Claims Are Barred by the Statute of Limitations.

Plaintiffs contend that various demand letters, warrants in debt, memorandums of liens, and documents used in the garnishment process with respect to the collection of the Plaintiffs' unpaid condominium association debts violated the FDCPA.  As a matter of law, and as demonstrated by a plain reading of the Complaint, many of these documents fall outside the scope of the FDCPA's statute of limitations and cannot be used to impose liability against Segan.

As an initial matter, a motion under Rule 12(c) is appropriate to assert an affirmative statute of limitations defense when the pleadings themselves contain sufficient information to make a ruling.  See West v. ITT Cont'l Baking Co., 683 F.2d 845, 846 (4th Cir. 1982) (affirming dismissal of case on Rule 12(c) motion when "the facts alleged" showed claim was barred on statute-of-limitations grounds); see also Tollison v. B & J Mach. Co., 812 F. Supp. 618, 619 (D.S.C. 1993) ("A motion under Rule 12(c) is an appropriate procedure when the statute of limitations is alleged to provide an effective bar against a plaintiff's claims.").

The FDCPA provides that "action[s] to enforce any liability created by [the Act]" must be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d); see also Vitullo v. Mancini, 684 F. Supp. 2d 747, 753 (E.D. Va. 2010) (Ellis, J.) (holding that claims based on letter which, inter alia, contained allegedly false statements and was sent more than one year prior to the filing of the FDCPA claim are time-barred).  It is pellucidly clear that many of the discrete acts alleged to constitute violations of the FDCPA in this case are not actionable since they occurred more than one year prior to the filing of the FDCPA claim.

The Complaint was filed on May 7, 2012 such that any FDCPA claim derived from a false or misleading statement contained in a document mailed or filed on or before May 6, 2011 is time barred.  Vitullo, 684 F. Supp. 2d at 753 & n.6 ("The alleged FDCPA violation occurred, and the action accrued, when Mancini sent the letter . . ., not when Julio Vitullo received the letter.").  Accordingly, the following documents Plaintiffs explicitly refer to and rely upon in their Complaint may not be used to impose liability against Segan:

Tsvetovats

- March 7, 2011 demand letter (Compl. ¶ 9 & Def.'s Ex. 5);

- July 23, 2010 warrant in debt (id. 12-13 & Def.'s Ex. 1);

- The February 2, 2011 "garnishment action" that followed the entry of judgment on the July 23, 2010 warrant in debt (id. ¶¶14-16); and

- July 20, 2010 Memorandum of Lien, one of the "multiple memoranda of liens" referenced in Paragraph 21 of the Complaint.  (See Def.'s Ex. 20.)

Pritchard

- June 4, September 8, September 11, November 25, December 3 and December 6, 2008 demand letters (Compl. ¶ 25);

- June 8, September 8, and December 10, 2009 demand letters (id.);

- July 20, 2010 and October 26, 2010 demand letters (id.);

- September 10, 2008 warrant in debt (<u>id.</u> ¶ 27 & Def.'s Ex. 9);

- September 2009 warrant in debt (<u>id.</u> ¶ 28 & Def.'s Ex. 10);

- November 19, 2010 warrant in debt (<u>id.</u> ¶ 30 & Ex. 12);

- November 2010 garnishment, one of the two undated "garnishment actions" referenced in Paragraphs 34-35 of the Complaint.  (<u>See</u> Def.'s Ex. 16.)

- All three Memorandums of Lien – September 8, 2008, November 17, 2009 and April 29, 2011– referenced in Paragraph 37 of the Complaint.  (<u>See</u> Def.'s Ex. 21.)

In sum, Plaintiffs cannot use these documents to establish a violation of the FDCPA because they are time barred.  Because Plaintiffs clearly asserted these claims against Segan in bad faith, the firm is entitled to its reasonable attorneys' fees in having to respond.  <u>See</u> 15 U.S.C. § 1692k(a)(3); <u>Guidry v. Clare</u>, 442 F. Supp. 2d 282  (E.D. Va. 2006) (Ellis, J.).

**B.      Legal Framework For Alleged FDCPA Violations**

To state an FDCPA claim, a plaintiff must plead all of the following elements: (1) the defendant is a "debt collector"; (2) the plaintiff is the object of collection activity from a consumer debt; and (3) the defendant engaged in some act or omission specifically prohibited by the FDCPA. <u>Dikun v. Streich</u>, 369 F. Supp. 2d 781, 784-85 (E.D. Va. 2005).  Here, Plaintiffs contend that Segan's collection activities violate three separate FDCPA provisions: 15 U.S.C. §§ 1692f(1), 1692e, and 1692d(1).

**1.      Count I – 15 U.S.C. § 1692f(1).**

Section 1692f prohibits debt collectors from using unfair or unconscionable means to collect a debt. Subsection (1) specifically forbids collecting interest, fees, charges, or expenses incidental to the principal obligation, unless that amount is expressly authorized by the debt agreement or permitted by law.  Congress did not define "unfair or unconscionable."  "[C]ourts have considered an action unfair where it is 'marked by injustice, partiality, or deception,' and

unconscionable when it is 'unscrupulous,' 'show[s] no regard for conscience,' or 'affront[s] the sense of justice, decency, or reasonableness.'" Penn v. Cumberland, 2012 U.S. Dist. LEXIS 104565, at *29-*30 (E.D. Va. July 2012) (Ellis, J.) (citation omitted).  The Complaint contains no factual allegation plausibly demonstrating that Segan used "unfair or unconscionable" means to collect the Plaintiffs' debts.  Rather, such efforts were made pursuant to the condominium association instruments, by-laws and resolutions, and in accordance with applicable Virginia law.

Courts have also held that "§ 1692f(1) applies only if the *debt collector* adds interest or fees, not if the *creditor* improperly calculated the amount owed." Kasalo v. NCSPLUS Inc., 2011 U.S. Dist. LEXIS 114480, at *16 (N.D. Ill. Oct. 4, 2011).  Cases discussing possible violations of § 1692f pertain to charges added and actions taken by debt collectors after the account was placed for collection. E.g., Allen ex rel. Martin v. LaSalle Bank, N.A., 629 F.3d 364, 365-66 (3d Cir. 2011) (finding debtor stated a claim under § 1962f when debt collector allegedly added unauthorized charges for its own attorney fees and costs).  As evidenced below, Renaissance and Wilton House (and not Segan) imposed most of the charges (late fees, interest rate, and the amount of interest) included on Plaintiffs' accounts, and such sums were not "added" by Segan to the sum due and owing.  And while Segan may have computed the interest and fees due in certain instances, it did so only in accordance with the Associations' rules.

Finally, it is well-established Section 1692f claims cannot coexist with Section 1692e claims to the extent both claims are based on the same allegedly wrongful conduct.  See Penn, 2012 U.S. Dist. LEXIS 104565, at *32 ("Moreover, Count X also fails because Penn does not allege any conduct in it separate from the conduct that forms the basis of the § 1692e claims.").  Here, it is evident from the face of the Complaint that the Section 1692f(1) claim (Count 1) must

be dismissed because it is based on the exact same allegedly wrongful conduct alleged with respect to Section 1692e (Count 2).  <u>Compare</u> Compl. ¶ 50 <u>with</u> <u>id.</u> ¶¶ 53-56.

2.      **Count II – 15 U.S.C. § 1692e.**

Plaintiffs allege that Segan's practices violated four subdivisions of Section 1692e – §§ 1692e(2)(A), 1692e(2)(B), 1692e(5) and 1692e(10).  (<u>See</u> Compl. ¶¶ 53-56.)

Section 1692e(2) prohibits the false representation of the amount, character or legal status of a debt.  To prevail on a false representation theory, Plaintiffs must prove the statement is both false *and* material.  <u>Donohue v. Quick Collect, Inc.</u>, 592 F.3d 1027, 1033 (9th Cir. 2010); <u>Miller v. Javitch, Block & Rathbone</u>, 561 F.3d 588, 596 (6th Cir. 2009); <u>Hahn v. Triumph P'ships LLC</u>, 557 F.3d 755, 757-58 (7th Cir. 2009); <u>cf.</u> <u>Warren v. Sessoms & Rogers</u>, 676 F.3d 365 (4th Cir. 2012) (materiality requirement not applicable to § 1692e(11) because conduct contemplated there involves a failure to *disclose* rather than a false means used to *collect* a debt.).  Here, the total amount of the debt is concededly material, but the documents referenced in the Complaint and attached to this Motion make crystal clear that Plaintiffs, in fact, legally owed what Segan said they owed.  Moreover, the demand letters, lawsuits and garnishments are not actionable because no statement contained therein would mislead the "least sophisticated consumer." <u>United States v. Nat'l Fin. Servs., Inc.</u>, 98 F.3d 131, 135-136 (4th Cir. 1996).  The "least sophisticated consumer" test requires a court to evaluate a communication "as a whole, not sentence-by-sentence," since even the least sophisticated consumer is bound to read a communication in its entirety.  <u>Vitullo</u>, 684 F. Supp. 2d at 756.

Section 1692e(5) prohibits threats to take legal action that cannot be undertaken. No document referenced in the Complaint suggests a threat by Segan to take legal action that could not lawfully be undertaken.  Many of the letters say that the Plaintiffs' accounts can be

accelerated, that a lawsuit may be filed for unpaid assessments, or that a memorandum of lien would be filed.  (E.g., Def.'s Ex. 18.)  All of these "threats to take legal action" are authorized under Virginia law and the condominium instruments and were, in fact, taken.

Finally, Section 1692e(10) prohibits the use of any false representation or deceptive means to  attempt to collect any debt or to obtain information concerning a consumer.  The Complaint does not allege that Segan used collections procedures to obtain information about the Plaintiffs.  Further, and as demonstrate below, the documents fail to plausibly allege that Segan use any misrepresentation or deception to attempt collection of Plaintiffs' debts.

**3.      Count III – 15 U.S.C. § 1692d(1).**

Section 1692d provides that a debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.  Specifically, Subsection (1) makes it a violation to use or threaten to use violence or other criminal means to harm the physical person, reputation, or property of any person. Plaintiffs contend that Segan's submission of "falsified garnishment suggestion[s] constituted a criminal offense, a Class 1 misdemeanor as per § 8.01-511 of the Code of Virginia[.]"  (Compl. ¶¶ 38; 59-60.)  The only violation claimed with respect to garnishments is that Segan made a claim for garnishment costs that had not been awarded by a court. Plaintiffs apparently failed to read the relevant statutes, the Garnishment Summonses issued in their cases, or Associations' governing documents of which they are members.  As previously discussed herein, the form for a garnishment summons that includes garnishment costs is mandated by Va. Code §§ 8.01-511 and 8.01-512.3 and references these statutes on its face, and the collection of garnishment costs are expressly authorized by Va. Code § 8.01-475 and the governing documents of Renaissance and

Wilton House.  Even so, the alleged misconduct in this case falls well short of the harassing, oppressive, or abusive conduct required to satisfy Section 1692d(1).

**C.    Segan's Demand Letters Do Not Violate the FDCPA.**

Plaintiffs contend that each Segan demand letter referenced in the Complaint contains "numerous false, deceptive, and/or misleading representations in connection with the collection of debt."  (Compl. ¶¶ 11, 26.)  The specific demand letters sent to the Tsvetovats referenced in the Complaint (and which are not time-barred) are dated January 24 and March 12, 2012, respectively.  (See Def.'s Exs. 6 & 7; Compl. ¶ 9.)  The demand letters sent to Pritchard and referenced in the Complaint (and which are not time-barred) are dated August 22, 2011, February 13 and March 22, 2012, respectively.  (Id. Exs. 17-19; Compl. ¶ 25.)

**1.    Segan Did Not Misrepresent That Plaintiffs Were "Liable For the Association's Attorneys' Fees."**

Plaintiffs contend that each of the above-referenced demand letters is false because they tell the Plaintiffs that they are liable for the Associations' attorneys' fees which had not been awarded by a court.  The plain language of the letters, the Associations' by-laws and resolutions, and applicable statutes conclusively demonstrate that Segan's communications do not violate the FDCPA.

Tsvetovat.  As alleged in the Complaint, Renaissance's by-laws provide that the "prevailing party" in a proceeding arising out of a Unit Owner's default "shall be entitled to recover" his reasonable attorneys' fees and costs. (Compl. ¶ 11.a. & Ex. A, Art. X, § 1(c) attached thereto.)  The January 24, 2012 letter merely says that the Tsvetovats are liable for $1,268.12 in "**judgment** legal fees" and $79 in "**judgment** costs" because a **"judgment was entered against you** on July 27, 2011."  (Def.'s Ex. 6.)  Thus, Renaissance was, in fact, a "prevailing party" entitled to recover its attorneys' fees under the Renaissance's by-laws.  There

is nothing false, deceptive or misleading about this statement.  Moreover, the Tsvetovats are

precluded from challenging any award included as part of an underlying judgment in state court

pursuant to the Rooker-Feldman doctrine.  The January 24 letter does nothing more than

accurately report the contents of a previously awarded judgment against the Tsvetovats, and if

they wanted to challenge that award they should have done so in the state court judicial system.

With respect to the March 12, 2012 letter, the demand does **not** say that the Tsvetovats

are liable for attorneys' fees and costs.  Rather, the letter repeatedly says that:

- "**a claim** is being made for attorney's fees and costs in the collection of your delinquent account" (Def.'s Ex. 7 at 1);

- "A lawsuit **may be filed** against you personally in the Fairfax County General District Court" and "**a claim** for legal fees and costs will be requested in accordance with the Association's governing documents and resolutions."  (Id. at 2);

- "a Memorandum of Lien **shall be filed** against your property in the Fairfax County Circuit Court to secure the assessments . . . as well as attorney's fees and costs in accordance with the Association's governing documents and resolutions."  (Id.); and

- The Statement of Account attached to the demand letter notes that "**Claimed Legal Fees and Costs**" are $136.42.

Thus, the March 12, 2012 letter does **not** say (as the Complaint alleges) that the

Tsvetovats are liable for attorney's fees and costs.  Rather, the letter explicitly states that such

fees and costs are merely being **"claimed."**  This is not a false or misleading representation.

Pritchard: The same allegation raised with respect to the Tsvetovats is alleged with

respect to Pritchard.  (See Compl. ¶ 26.a.)  Like the Renaissance by-laws, the Wilton House by-

laws provide that a "prevailing party" in a proceeding arising out of a Unit Owner's default is

entitled to a reasonable attorney's fee and costs.  (Id. Ex. C at Article X, § 1(c).)  The February

13, 2012 letter, like the March 12, 2012 letter issued to the Tsvetovats, states that "**claims**" for

attorneys' fees will be made.  Thus, the letter does **not** say (as the Complaint alleges) that

Pritchard is liable for attorney's fees and costs.  Rather, the letter says that such fees and costs are merely being **"claimed."**  (See Def.'s Ex. 18.)

The August 22, 2011 and March 22, 2012 letters are similar.  They reference amounts for legal fees secured by Memorandums of Lien or docketed judgments, and thus cannot be challenged in this Court pursuant to the Rooker-Feldman doctrine.  (Def.'s Exs. 17 and 19.) They also make "claims" for other legal fees.

"When a debtor has contractually agreed to pay attorneys' fees and collection costs, a debt collector may, without a court's permission, state those fees and costs and include that amount in the dunning letter."  Fields v. Wilber Law Firm, P.C., 383 F.3d 562, 565 (7th Cir. 2004) ("Essentially, Fields asks us to endorse an approach that would require every debt collector under the FDCPA to go to court every time it sought to enforce a provision in a payment agreement signed by the debtor that allows reimbursement of attorneys' fees and collection costs.  Plainly stated, the statute does not require such an extraordinary result."); see also Singer v. Pierce & Assocs., P.C., 383 F.3d 596, 598-99 (7th Cir. 2004); Miller v. Wolpoff & Abramson, LLP, 321 F.3d 292 (2d Cir. 2003); Freyermuth v. Credit Bureau Services, Inc., 248 F.3d 767 (8th Cir. 2001). Shapiro v. Riddle & Assocs., P.C., 240 F. Supp. 2d 287, 289-90 (S.D.N.Y. 2003) (holding that it was not an FDCPA violation to include an attorneys' fees charge in a debt collection letter when that fee was authorized by an agreement between the creditor and debtor).  Accordingly, Segan did not violate the FDCPA.  See, e.g., 15 U.S.C. 1692f(1) (violation to collect "any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless **such amount is expressly authorized by the agreement creating the debt** or permitted by law.").

The FDCPA mandates that a debt collector disclose to a debtor the amounts the collector intends to seek in court. Here, the demand letters at issue clearly differentiate between the debt owed and the Association's claim for legal fees such that no FDCPA violation occurred. See Singer, 383 F.3d at 598 ("Saxon segregated the attorneys' fees from the underlying debt in an itemized list of expenses, thus avoiding a § 1692e or § 1692f violation."). Even an unsophisticated consumer would not be misled or confused about the amount of debt under these circumstances. Plaintiffs' contention is that Segan had no right to make a claim for attorneys' fees until the firm went to court and became a prevailing party. Such an argument is nonsensical. See Fields, 383 F.3d at 565. If Plaintiffs' argument were to carry the day, Segan would be required to conceal its intention of seeking legal fees from the debtor (an actual misrepresentation), and would require a debtor to have a judgment entered against him resulting in damage to his credit, denying Plaintiffs the right to settle the dispute without litigation.[8]

## 2.   The Amount of Interest Was Not Misrepresented.

Plaintiffs next contend that the demand letters are false because they attempted to collect interest on the principal, **and** also on late fees, attorneys' fees and other charges when the Associations' by-laws provide that interest may only be imposed on the principal unpaid amount. (See Compl. ¶¶ 11.b, 26.b.) Plaintiffs are wrong.

The January 24, 2012 letter to the Tsvetovats provides that a judgment was entered on July 27, 2011 and notes that one of the amounts the Tsvetovats must pay is $1,122.55 for "2011 Judgment Interest at 18% from 04/18/2011 through 04/11/2012 (court date)." (Def.'s Ex. 6.) The January 24 letter is clearly referencing a previous judgment order to which the Tsvetovats

---

[8] Accordingly, this case is distinguishable from Sunga v. Rees Broome, P.C., 2010 U.S. Dist. LEXIS 81970 (E.D. Va. Aug. 12, 2010). The Statement of Account attached to the letters in Sunga did not provide that attorneys' fees were "claimed" but, rather, indicated that such sum was due and owing and made no effort to differentiate between the debt owed and claim for legal fees. See Case No. 1:09cv1119 (dkt. # 40, Ex. A.)

neither objected nor appealed and, accordingly, Plaintiffs cannot challenge either the letter or the underlying judgment pursuant to Rooker-Feldman.  The same argument applies with equal force to the August 22, 2011 and March 22, 2012 letters sent to Pritchard which also reference interest **secured by multiple docketed judgments**.  (See Def.'s Exs. 17, 19.)

The March 12, 2012 letter states that the Tsvetovats owe Renaissance "$1,782.96, representing $1,646.54 in assessments owed from January 1, 2012 through March 12, 2012, late fees, and accrued interest and $136.42 in legal fees and costs claimed for this letter." (Def.'s Ex. 7.)  A careful review of the Statement of Account attached to the March 12 letter indisputably indicates that interest was **not** included in or assessed on late fees, attorneys' fees, or any other sum.  No mention of interest is contained anywhere on the Statement of Account.  It is only **after** a judgment is entered that interest is tacked on to the unpaid assessment and late fees which collectively represent the judgment principal.  This is consistent with the Renaissance by-laws which provide that in the event of a default, interest "may be imposed . . . on the principal amount unpaid from the date due until paid." (Compl. Ex. A at Article X, § 1(e).)  A late fee is assessed in accordance with Renaissance's governing documents and is therefore subject to a charge of interest in addition to interest on unpaid assessments.  Contrary to the Complaint's incorrect assertion, no facts are pled indicating that interest is charged on costs or legal fees.[9]

### 3.    The Interest Rate Was Not Misrepresented.

Plaintiffs assert that their demand letters are false because they attempted to collect interest at 18% when Virginia law provides that a condominium association may recover interest only "at the legal rate" for unpaid assessments, which is 6%. (See Compl. ¶¶ 11.c., 13, 18, and 26.c.)  Further, the Complaint alleges that the "legal rate" may not be varied by agreement of the parties. Plaintiffs rely on Va. Code §§ 55-79.84(E) and 55-79.41:1 for these conclusions.

---

[9] The same argument equally applies to the February 13, 2012 letter to Pritchard.  (See Def.'s Ex. 18.)

First, to the extent Plaintiffs challenge judgments entered against them that included interest at a rate of 18%, (see Compl. ¶¶ 13, 18), those challenges are foreclosed by Rooker-Feldman.

Second, Va. Code § 55-79.84(E) provides that in a suit brought by a unit owners' Association to enforce a lien for unpaid assessments levied against a condominium owner, the Association "may also recover interest at the legal rate for the sums secured by the lien from the time each such sum became due and payable."  Section 55-79.84 applies only to "suits brought by a unit owners' association **to enforce a lien** for unpaid assessments levied against a condominium unit owner in accordance with the Act and lawful provisions of applicable condominium instruments." Mozley v. Prestwould Bd. of Directors, 264 Va. 549, 554-55 (2002) (emphasis added). None of the demand letters referenced in the Complaint constitutes "suits . . . to enforce a lien for unpaid assessments," so Section 55-79.84(E) does not apply.

The judgments referenced in the Complaint are personal judgments against the Plaintiffs and were not taken pursuant to Va. Code Section 55-79.84, but rather were authorized by Articles VI and X of the Associations' governing documents as a means of relief when a unit owner fails to pay their assessments.  Va. Code § 6.2-302(A) provides that the judgment rate of interest is 6%, except that a money judgment entered in an action arising from a contract shall carry interest at the rate lawfully charged on such contract, or at six percent annually, whichever is higher. Here, the Renaissance by-laws expressly authorize interest at a contract different from the judgment default interest rate of 6%.  Hence, Segan did not misrepresent the amount of interest chargeable to the Tsvetovats' account.

Finally, with respect to Pritchard, any interest charged **was** at the judgment rate and was not charged until a judgment was awarded by the court and then only from the date of the

judgment award. The Complaint incorrectly alleges that Pritchard was charged interest at 18%. (Compl. ¶ 26.c.)  Had Pritchard actually reviewed the Wilton House by-laws, or even bothered looking at the allegations his lawyers had drafted on his behalf, he would have realized that the interest rate applicable to his account was the **judgment rate**—6%—not the 18% alleged out of thin air.  As an example, the March 22, 2012 letter to Pritchard plainly indicates at various times that interest was assessed at 6%.  (See Def.'s Ex. 19.)  Moreover, Wilton House's by-laws only permit interest to be charged at 18% when a Unit Owner fails to pay any sum **"other than for Common Expenses."**  (Compl., Ex. C at Art. X § 1(e).)  Pritchard's unpaid assessments and incurred late fees are "common expenses" and thus did not accrue interest at any rate higher than the judgment rate, 6%.

Plaintiffs have asserted a patently frivolous claim, as Plaintiffs' **own allegations** indicate that, when a judgment was entered against Pritchard, interest was included at the rate of 6% -- **not** the 18% alleged in the Complaint.  (See Compl. ¶¶ 31, 33.)  Accordingly, Plaintiffs clearly asserted this claim against Segan in bad faith, and the firm is entitled to its reasonable attorneys' fees in having to respond to this claim.  See Guidry, 442 F. Supp. 2d at 289.

### 4.    The Computation of Interest Was Not False.

The reverse side of the Suggestion for Summons in Garnishment lists all payments being credited to the judgment and the calculation of the interest claimed in the garnishment.  (Def.'s Exs. 2A, 4A, 16.)  The reverse also indicates the order of application of payments pursuant to the Associations' governing documents.  The dates from and to which the interest is calculated shows how the payments were posted.  As payments are posted pursuant to the Resolutions for each Association, i.e., to legal fees and costs first etc., until such time as the payments are sufficient to reach the judgment principal, they would not be credited to the judgment principal.

As to the January 24, 2012 letter, it explicitly states the application of the payments that were received both from the owner as well as pursuant to the garnishments that had been filed, and that application was done pursuant to the governing documents of the Association.

**5.      The Letters Demanded Payment of Interest That Was Due and Owing.**

In Paragraph 11.e., Plaintiffs contend that the January 24, 2012 Tsvetovat demand letter is false because it attempted to collect interest that was not due.  Plaintiffs argue that the January 24 letter "demanded payment of interest through April 11, 2012, which had not yet accrued."

The January 24 letter noted that a judgment had been entered against the Tsvetovats on July 27, 2011 in the Fairfax General District Court.  The reference to "judgment interest" in the January 24 letter is based on a filed Suggestion for Summons in Garnishment.  (See Def.'s Ex. 6.)  The interest was calculated pursuant to statute, Va. Code § 8.01-511, which provides that the judgment creditor in a suggestion in garnishment must specify the amount of interest claimed to be due upon the judgment, **"calculated to the return date of the summons."**  Because there was no way for Segan to know when, if ever, the Tsvetovats would want to pay off their debt to stop the garnishment, the interest that was part of the filed garnishment summons was provided to them.  Hence, the letter tracks black letter law and is not a false representation for purposes of the FDCPA.

**6.      The Letters Provide That the Tsvetovats Are Liable for Late Fees of $70.00 Per Month Because the Renaissance Governing Documents Imposed Such a Late Fee on Unpaid Assessments.**

Renaissance's Policy Resolution No. 07-1 sets the late fee at $70.00 for all unpaid monthly assessments.  (Compl. Ex. B at II.A.)  In Paragraph 11.f, Plaintiffs alleges that the January 24 and March 12, 2012 demand letters (Def.'s Exs. 6 and 7) misrepresented that the Tsvetovats were liable for late fees of $70.00/month because Virginia law purportedly caps such

charges against unit owners at $50.00 for a single offense.  Plaintiffs erroneously rely on Va.

Code § 55-79.80:2 as support for this conclusion.  Section 55-79.80:2 provides that Associations

may "assess charges against any unit owner for any violation of the condominium instruments or

of the rules or regulations promulgated pursuant thereto for which such unit owner or his family

members, tenants, guests or other invitees are responsible."  Id. § 55-79.80:2(A).

     No court has ever held that Section 55-79.80:2 is intended to limit the amount of a **late

fee** that can be charged when a Unit Owner fails to timely pay an assessment.  Under subdivision

(B), subsection (i) provides for the suspension of a member's right to use certain services

provided by the Association when the member's assessments are more than sixty days past due;

however, subsection (ii), which is the subsection authorizing the assessment of charges

referenced by the Plaintiffs, does not refer to any delinquency in assessments and therefore does

not apply to that situation nor apply to limiting late fees imposed by the Association.  In order to

impose a charge under subsection (ii), notice and an opportunity to be heard must be provided

and the member then may be penalized up to $50 or $10 per day for any offense of a continuing

nature.  To apply subsection (ii) to late fees would lead to the absurd result that, in order to

impose a late fee, notice of the delinquency and an opportunity to be heard before the Board of

Directors sent via certified mail, return receipt requested, would be required on a monthly basis

for each delinquent owner.  As is clear, this provision serves as a cap on the amounts a property

owner can be charged for violating certain rules established by the condominium association.  It

does not apply as a ceiling for the amounts an association can charge for late fees that are

expressly authorized by the Associations' governing documents.

     In addition, the governing documents of the Association distinguishes between the

imposition of charges as contemplated by Va. Code Section 55-79.80:2, in a specific reference,

and the imposition of late fees as each is outlined in a separate subsection of the Association

documents - Article X, Section 1(i) and Article X, Section 1(g) respectively.  Plaintiffs' claims

based on alleged misrepresentations of excessive late fees is without merit.

Moreover, to the extent the $70.00 late fee is erroneous, it was clearly due to a *bona fide*

error.  Renaissance by-law Article X, §§ 1(g) and (i) and Policy Resolution No. 07-1 differentiate

between "late fees" and "charges []pursuant to Section 55-79.80:2 of the Condominium act[.]"

See also Compl. Ex. B at II.E.a & c.  "Late fees" and "charges" pursuant to Section 55-79.80:2

are not one and the same.  Accordingly, Virginia law does not impose a $50.00 cap on late fees

but, to the extent it does, such a charge was imposed by duly enacted by-laws and resolutions

and constitutes a *bona fide* error.

### 7.    The Letters Are Not Misleading Because They Provide That a Memorandum of Lien will be Filed Against the Property For Items Other Than Unpaid Assessments.

In Paragraphs 11.g. and 26.e., the Complaint alleges that the demand letters provide that a

Memorandum of Lien will be filed against the property "to secure the assessments, late fees and

interest owed . . . as well as attorney's fees and costs. . . ."  This language is found in the

February 13, 2012 letter to Pritchard and in the March 12, 2012 letter to the Tsvetovats.  (Def.'s

Exs. 7 & 18.)  Plaintiffs contend that the language in the letters is a misrepresentation because

Virginia law (Va. Code § 55-79.84(A)) only allows a lien "for unpaid assessments"—not a lien

for late fees, interest, and attorneys' fees and costs.  Again, Plaintiffs are wrong.

Section 55-79.84(A) provides that "[t]he unit owners' association shall have a lien on

every condominium unit for unpaid assessments levied against that condominium unit in

accordance with the provisions of this chapter **and all lawful provisions of the condominium**

**instruments."**  (Emphasis added.)  This provision does not preclude Renaissance and Wilton

House from defining in its governing documents the scope of what constitutes an assessment for which it may have a lien, and there is no allegation that Segan filed liens that exceeded the sums for which the Associations could lawfully collect under the governing documents.

Indeed, the Renaissance and Wilton House by-laws explicitly permit the Associations to use a lien to secure late fees, interest, and attorneys' fees and costs.  Specifically, Article X, Section 2(a) of the Renaissance by-laws provides that "[t]he total annual assessment of each Unit Owner for Common Expenses or any special assessment or **any other sum duly levied** . . . is hereby declared to be a lien levied against the Condominium Unit of such Unit Owner as provided in Section 55-79.84 of the Condominium Act."  (Compl., Ex. A at Art. X, § 2(a) (emphasis added).)  The lien provision in the Wilton House by-laws is identical.  (Id. Ex. C at Art. X, Section 2(a).) Thus, the express provisions in the Renaissance and Wilton House by-laws allow the Associations' liens to secure late fees, interest, and attorneys' fees and costs—"sums duly levied" under the Associations' governing instruments.

Finally, in informing the Plaintiffs that their delinquency created a lien against their property that would be memorialized by a memorandum of lien, and referring to the Associations' right to foreclose on that lien, Segan was not acting as a "debt collector" as defined by the FDCPA.  Instead, it was acting to enforce a security interest against the Plaintiffs' property.  Save for § 1692f(6),[10] under which Plaintiffs do not purport to assert a claim, the FDCPA does not apply to a party that is only "an enforcer of a security interest."  Jordan v. Kent Recovery Services, Inc., 731 F. Supp. 652, 657 (D. Del. 1990).

**8.    The Letters Correctly Claim That the Plaintiffs Are Liable for Garnishment Costs.**

---

[10] Section 1692f(6) provides expressly that it reaches "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests."

According to the Complaint, Virginia law does not authorize the collection of garnishment costs from the judgment debtor and, without an order from the court authorizing the same, the attempted collection of such amounts is unlawful (and, indeed, purportedly criminal). (See Compl. ¶¶ 11.h, 15, 19, 26.f, 35, 59-60.)  This is a frivolous argument.  The January 24, 2012 letter states the Tsvetovats are liable for $94 in garnishment costs up to the court date of April 11, 2012.  (Def.'s Ex. 6.)  Only the March 22, 2012 letter to Pritchard mentions garnishment costs, but then only in the context of those "secured" by a "docketed judgment" such that it is barred by Rooker-Feldman.  (Def.'s Ex. 19.)  Garnishment costs were also sought in the various garnishment summonses issued to the Plaintiffs.

Va. Code § 8.01-512.3 prescribes the legislatively-ordained form for a garnishment summons that must be used in all garnishment proceedings.  The form contains a specific box for "garnishment costs."  Under a writ of *fieri facias*, a duly authorized officer is obligated to execute the writ and to "make from the intangible personal estate of the judgment debtor(s) the principal, interest, **costs** and attorneys' fees . . . **shown in the garnishment summons**."  (E.g., Def.'s Ex. 16.)  Because the garnishment summonses were in compliance with Virginia law and the Associations' governing documents, as discussed in detail above, they cannot be used to impose liability under the FDCPA.

Even assuming the garnishment documents conceivably violate the law (and they do not), such conduct pails in comparison to the sort of harassing and abusive conduct prohibited by Section 1692d(1).  Compare Horkey v. J.V.D.B. & Assocs., 333 F.3d 769, 774 (7th Cir. 2003) (statement asking debtor's coworker to tell the debtor to "stop being such a f*cking b*tch" violated the statute because the natural consequence was to abuse the hearer), with Bassett v. I.C. Sys., Inc., 715 F. Supp. 2d 803, 809 (N.D. Ill. 2010) (finding that a debt collector calling a debtor

a liar, laughing at him, and accusing him of making excuses did not constitute a violation of §

1692d). The alleged misconduct, even assuming it is true, was not harassing, oppressive or

abusive as contemplated by Section 1692d(1). What is more, this Court has no jurisdiction to

entertain Plaintiffs allegations relating to garnishment costs because they are barred by the

Rooker-Feldman doctrine.

### 9. The Method of Crediting Payments is Proper.

The January 24, 2012 letter to the Tsvetovats provides that "all payments are applied to

your oldest outstanding debt first." (Def.'s Ex. 6.) According to the Complaint, this method of

crediting payments is contrary to method set forth in the Renaissance by-laws, and to the FDCPA

which says that if a debtor makes a payment, the debt collector must apply the payment "in

accordance with the consumer's directions." (See Compl. ¶ 11.i.) Plaintiffs cite only a portion

of the January 24 letter. The next sentence says: "Therefore, payments received in June and July

2011 were applied to the balance due under the 2010 judgment, 2010 Lien legal fees and 2011

Lien legal fees. These amounts satisfied the 2010 judgment and lien and they have been released

as satisfied." (Def.'s Ex. 6.) The "oldest outstanding debt" referenced in the letter obviously

referred to the outstanding judgments and lien legal fees. Further, the payments were not

accompanied by instructions as to their application. As such, they were applied pursuant to the

Policy Resolution.

### D. Segan Did Not Violate the FDCPA By Filing Lawsuits Against the Plaintiffs.

Plaintiffs allege that Segan filed lawsuits against the Plaintiffs which violated the FDCPA

because the lawsuits (1) sought payment at an interest rate greater than 6%, (2) interest was

calculated on a basis other than principal, and (3) sought late fees greater than $50. (Compl. ¶¶

12-13, 17-18, 30-33, 40.) Plaintiffs did not attach any of the lawsuits to the Complaint, and the timely warrants in debt are attached as Defendant's Exhibits 3 and 14.

First, Rooker-Feldman prevents the Court from entertaining challenges to the state court warrants in debt. Second, as demonstrated previously, the interest rates, calculation of interest, and request for late fees in excess of $50.00 were all true and accurate and not deceptive under the FDCPA.  Third, Plaintiffs' own lawsuit alleges that interest charged against Pritchard was 6% and no higher.  (Compl. ¶¶ 29, 31, 33.)

Finally, the relief Segan **sought** in the various warrants in debt amounted to nothing more than requests for relief and no more.  The interest, late fees and any other sum sought in the warrants were mere requests to a third-party—the state court—for consideration, not a demand to the debtor himself.  Accordingly, such requests cannot be used to impose liability against Segan. See Winn v. Unifund CCR Partners, 2007 U.S. Dist. LEXIS 24939 (D. Ariz. Mar. 30, 2007); Argentieri v. Fisher Landscapes, 15 F. Supp. 2d 55, 61 (D. Mass. 1998) ("A prayer for relief in a complaint, even where it specifies the quantity of attorney's fees, is just that: a request to a third party—the court—for consideration, not a demand to the debtor himself.").  "Even the 'least sophisticated debtor' would understand that [the attorneys' fees sought in the prayer for relief] is not an explicit part of his agreement.  Instead, it is what his creditor would like the court to conclude is reasonable.  He might have to pay it; he might not."  Winn, 2007 U.S. Dist. LEXIS 24939, at *10; see Argentieri, 15 F. Supp. 2d at 61.

## IV.   CONCLUSION

Plaintiffs' haphazard Complaint is defective in myriad ways.  It asserts legal claims bereft of factual support, seeks relief under mutually exclusive statutory provisions, and inaccurately claims that Segan falsely claimed an entitlement to attorneys' fees, interest, excessive late fees,

and garnishment costs. At other times, Plaintiffs premise some of their assertions on inapposite provisions of Virginia law, and assert wrongdoing against Segan (e.g., the firm attempted to collect 18% interest against Pritchard) when their own explicit allegations conclusively demonstrate that Segan acted appropriately, lawfully and committed no such wrongdoing (e.g., interest was always charged at 6%). Defendant complied with its obligations under the FDCPA in every way and each representation it made to Plaintiffs rested on a well-founded factual basis. For all of these reasons, Segan respectfully requests that this Court dismiss Plaintiff's Class Action Complaint and afford such other relief as it deems proper, including an award of attorneys' fees for claims Plaintiffs have asserted in bad faith.

SEGAN, MASON & MASON, P.C.

By: _____"/s/"_____
　　　　　　　Brendan D. O'Toole

William D. Bayliss, Esquire (VSB No. 13741)
bbayliss@williamsmullen.com
Brendan D. O'Toole, Esq. (VSB # 71329)
botoole@williamsmullen.com
Joseph R. Pope, Esq. (VSB # 71371)
jpope@williamsmullen.com
Williams, Mullen, Clark & Dobbins, P.C.
200 South 10th Street
Richmond, VA 23219
Telephone: (804) 420-6588
Facsimile:   (804) 420-6507
*Counsel for Segan, Mason & Mason, P.C.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 28th day of August, 2012, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Kristi C. Kelly, Esquire (VSB # 72791)
kkelly@siplfirm.com
SUROVALL ISAACS PETERSEN & LEVY PLC
4010 University Drive, Suite 200
Fairfax, VA  22030
T: (703) 251.5400
F: (703) 591.9285
*Counsel for Plaintiffs*

Leonard A. Bennett, Esquire (VSB # 37523)
lenbennett@clalegal.com
Susan M. Rotkis, Esq. (VSB # 40693)
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Boulevard, Suite 1-A
Newport News, VA  23601
T:  (757) 930.3660
F:  (757) 930.3662
*Counsel for Plaintiffs*

By: _____”/s/”_____
Brendan D. O'Toole, Esquire (VSB # 71329))
botoole@williamsmullen.com
WILLIAMS, MULLEN, CLARK & DOBBINS, P.C.
Williams Mullen Center
200 South 10th Street, PO Box 1320
Richmond, VA  23218-1320
Telephone:  804.420.6000
Facsimile:  804.420.6507
*Counsel for Defendant*

18870325_3.DOC