**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| **MAKSIM TSVETOVAT**, *et al.*, )<br><br>                    **Plaintiffs**, )<br><br>          **v.**                )<br><br>**SEGAN MASON & MASON, P.C.**, )<br><br>                    **Defendant.**    ) | **Civil Action No.: 1:12-cv-510 TSE/JFA** |

**MEMORANDUM IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs MAKSIM TSVETOVAT, TATYANA TSVETOVAT AND CHRISTOPHER PRITCHARD, *individually and on behalf of all others similarly situated*, move the Court for class certification on behalf of a defined class, with integrated subclasses, of consumers claiming violations of the Fair Debt Collections Practices Act ("FDCPA") against Defendant SEGAN, MASON & MASON, P.C. Plaintiffs submit this Memorandum of law in support for their request for class certification.

**I.**
**INTRODUCTION**

This case arises from Segan, Mason & Mason, P.C.'s uniform, routine practices of collecting delinquent account for homeowners association and condominium association ("HOAs"), by demanding payment of amounts not authorized by contract or law. Defendant is alleged to systemically violate the FDCPA in three related ways:  (a.) demanding without a lawful basis payment of attorney's fees and costs in correspondences and memorandum of liens sent to consumers, (b.) demanding payment for interest that is not yet earned or accrued, and (c.)

demanding payment for interest calculated on the original balances of class members without first crediting payments made.  The proposed class definitions[1]:

> **1. Letter Class:** All natural persons to whom on or after May 5, 2011, the Defendant mailed a letter on behalf of a Condominium or Homeowner's association, based on the Defendant's form letters attached Exhibit "1" and in which Defendant made a demand for payment of attorneys' fees that had not be awarded by a Court.

> Plaintiffs Maksim Tsvetovat, Tatyana Tsvetovat and Christopher Pritchard are members of the Letter Class.

> **2. Memorandum of Lien Class**: All natural persons to whom on or after May 5, 2011, the Defendant mailed a Memorandum of Lien on behalf of a Condominium or Homeowner's association, based on Defendant's form attached as Exhibit "2" in which Defendant listed a demand for payment of attorneys' fees and costs that had not be awarded by a Court.

> Plaintiffs Maksim Tsvetovat and Tatyana Tsvetovat are members of the Memorandum of Lien Class.

> **3. Future Interest Class:** All natural persons to whom on or after May 5, 2011, the Defendant mailed a letter on behalf of a Condominium or Homeowner's association, similar to Exhibit "3" and in which Defendant did make a demand for payment of interest that had not yet accrued.

> Plaintiffs Maksim Tsvetovat and Tatyana Tsvetovat are members of the Future Interest Class.

---

[1] After conducting discovery, the Plaintiffs have redefined the class definitions they propose to the court. However, regardless of what is alleged as a proffered class definition in a complaint or in this motion, the Court is free to define the class as it finds more appropriate. *Bratcher v. Nat'l Standard Life Ins. Co*. (*In re Monumental Life Ins. Co*.), 365 F.3d 408, 414 (5th Cir. 2004) *cert.denied*, 125 S.Ct. 277 (2004); *Meyer v. Citizens & S. Nat'l Bank*, 106 F.R.D. 356, 360 (M.D. Ga. 1985) ("The Court has discretion in ruling on a motion to certify a class. This discretion extends to defining the scope of the class."); *Bafus v. Aspen Realty, Inc*., 236 F.R.D. 652, 655 (D. Idaho 2006) ("At the hearing in this matter, Plaintiffs offered this revised definition. The Court finds that the revised definition better reflects Plaintiffs' claims in these actions. Therefore, the Court will consider the revised definition in making its class certification determination.").  *See also Woods v. Stewart Title Guaranty Company*, 2007 WL 2872219 (D. Md. Sept. 17, 2007) (certifying a class of individuals as proposed by plaintiffs during class certification briefing that was broader than the class plaintiffs' alleged in the class action complaint after discovery uncovered a broader group of individuals harmed by the same practice alleged in the complaint).

**4. Payment Crediting Class:** All natural persons to whom on or after May 5, 2011, the Defendant mailed a letter on behalf of a Condominium or Homeowner's association, similar to Exhibit "3" and in which Defendant calculated interest prior to crediting one or payment that had been made on that account.

Plaintiffs Maksim Tsvetovat and Tatyana Tsvetovat are members of the Payment Crediting Class.

Plaintiffs' claims and those of the putative Class Members arise from Segan, Mason & Mason, P.C.'s adoption and use of uniform policies and practices that are unlawful under the FDCPA. This case presents a classic scenario for class certification. As fully demonstrated below, the requirements of Federal Rule of Civil Procedure 23(a) and 23(b)(3) are fully satisfied. It is therefore appropriate that the Court grant Plaintiffs' Motion for Class Certification.

## II.
## BACKGROUND OF THE CASE

This Court properly applies a liberal construction to Rule 23 in conducting the rigorous analysis as to whether certification is appropriate. *Fisher v. Virginia Elec. & Power Co.*, 217 F.R.D. 201, 210 (E.D. Va. 2003) (citing *In re A.H. Robins,* 880 F.2d at 728, for the Fourth Circuit view that Rule 23 receive a liberal construction and that, in applying the rule, it is the district court's responsibility to perform a rigorous analysis of the particular facts of the case). A Rule 23 motion is not the proper posture to determine, or even litigate, the merit of a case. The Court should "inquire no further into the merits than is necessary to determine the likely contours of this action should it proceed on a representative basis." *Id*. at 211.

Nevertheless, Plaintiffs provide the following overview and explanation of the putative class case in order to provide context for this motion.

**A.      The Fair Debt Collections Practices Act Requirements**

The Plaintiffs are proceeding on Counts One and Two of the Complaint. [2] The Plaintiffs have alleged that Segan, Mason & Mason, P.C.'s debt collection practices constitute violations of 15 U.S.C. § 1692e and f. "Generally, § 1692e prohibits debt collectors from using 'any false, deceptive, or misleading representation or means in connection with the collection of any debt.' Section 1692e also provides a non-exhaustive list of 'conduct' that satisfies this general prohibition. Amongst the non-exclusive list of Section 1692e prohibited misrepresentations, in addition to the general proscription of against using "any false, deceptive, or misleading representation or means in connection with the collection of any debt", are:

> **(2)** The false representation of--
> **(A)** the character, amount, or legal status of any debt; or
> **(B)** any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.
> **...**
> **(5)** The threat to take any action that cannot legally be taken or that is not intended to be taken.

15 U.S.C. § 1692e.  The Complaint alleges in Count Two that Defendant violated § 1692e by its "false representation of the character, amount or legal status of its collected debts," and "false representation of its entitlement to attorneys fees that it could lawfully demand" *See* Compl. at 53-54.

Section 1692f prohibits generally the use of "unfair or unconscionable means to collect or attempt to collect any debt", and specifically in relevant part:

> **(1)** The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by agreement creating the debt or permitted by law.

---

[2] Plaintiffs filed a Rule 41(A)(ii) stipulation of dismissal as to Count Three, which was consented to by counsel for the Defendant.

4

15 U.S.C. § 1692f.  The Complaint alleges in Count One that "Defendant violated… of 15 U.S.C. § 1692f(1)…by its actions demand for and collection of amounts not permitted by law" *See* Compl. at 50.

Unlike a consumer's claim based in tort or alleging fraud, an FDCPA claim does not require proof of either reliance or scienter.  Instead, the question is whether an objective least sophisticated consumer could be deceived – not whether the Plaintiff or any specific class member actually was.  As the Fourth Circuit put it, "the test is the capacity for the statement to mislead; evidence of actual deception is unnecessary." *United States v. Nat'l Fin. Servs.*, 98 F.3d 131, 139 (4th Cir.1996). Because the FDCPA's focus is on the collector's misconduct, it is not relevant whether the class members were actually misled.   And Judge Ellis more recently explained:

> The FDCPA provides a cause of action where a debt collector "use[s] any false, deceptive, or misleading representation or means in connection with the collection of any debt," and enumerates a nonexhaustive list of actionable conduct. 15 U.S.C. § 1692e. Importantly, the Fourth Circuit has held that "the test is the capacity of the statement to mislead; evidence of actual deception is unnecessary." *Nat'l Fin. Servs., Inc.*, 98 F.3d at 139; *see also Neild v. Wolpoff & Abramson, LLP,* 453 F.Supp.2d 918, 923 (E.D.Va.2006) ("[A] plaintiff asserting a claim under § 1692e need not prove actual reliance on a false representation.").

*Vitullo v. Mancini*, 684 F. Supp. 2d 747, 757-58 (E.D. Va. 2010).

As outlined above, Plaintiffs' Complaint asserts two claims for relief based upon these provisions of the FDCPA. The FDCPA civil liability provision provides in relevant part:

> (a) Amount of damages. Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of
>
> > (1) any actual damage sustained by such person as a result of such failure;
> >
> > (2)

(A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000; or

(B) in the case of a class action, (i) such amount for each named plaintiff as could recovered under subparagraph (A), and (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector; and

(3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court…

Under this provision, then, a person is liable to any consumer for violating any requirement with respect to that consumer for up to $1,000. Plaintiffs seek statutory damages of up to $1,000 per class member, and each class member's actual damages.

**B.     How The Class Would Allege that Segan, Mason & Mason, P.C. violated the FDCPA**

    **1.     Segan, Mason & Mason, P.C. systemically and uniformly impermissibly demanded legal fees that were not awarded by the court.**

To facilitate its high volume debt collection practice Segan, Mason & Mason, P.C. utilizes its own set of standard practices and documents- form demand letters and Memorandum of Liens- that are repugnant to the FDCPA requirements. Copies of Segan, Mason & Mason, P.C.'s form demand letters are attached hereto as Exhibit 1. The form demand letters specific to the named Plaintiffs are attached hereto as Exhibits 4 and 5.

These letters demand the payment of attorney's fees and costs for which the class member is not liable. For example, the February 13, 2012 letter to Mr. Pritchard indicates "[a]s of this date, we are informed that *you owe* the Association **$1,059.42**, **representing $923.00** in assessments owed from January 1, 2012 through February 13, 2012, late fees, and

accrued interest **and $136.42** in legal fees and costs claimed for this letter." *See* Ex. 4.[3] Defendant's forms misrepresent that the consumer is on that date liable for pre-judgment legal fees. This practice violates the FDCPA rights of thousands of individuals who were the subjects of Segan, Mason & Mason, P.C.'s debt collection practices over the past one year. *See* Exhibit 6 (identifying at least 2,223 demand letters sent to consumers demanding the payment of attorney's fees that had not been awarded by a court).

Segan, Mason & Mason, P.C. all but acknowledges that they cannot demand payment of legal fees in their correspondences to consumers. *See* Mem. Supp. Mot. J. 16-19. To that end, Segan, Mason & Mason, P.C. insinuates that its February 13, 2012 correspondence and March 12, 2012 correspondence "do not say (as the Complaint alleges) that the [Plaintiffs] are liable for attorney's fees and costs." Instead, Segan, Mason & Mason, P.C. contend that its correspondence to consumers is not false or misleading because it merely states that attorneys' fees are being claimed. *Id.* at 17. This is similar to the deposition testimony of Segan, Mason & Mason, P.C.'s paralegals, who stated:

> EXAMINATION ON BEHALF OF THE DEFENDANT BY MR. O'TOOLE:
>
> Q:    Okay. When you send out these demand letters – for example, Exhibit 4 – you're not telling Mr. Pritchard he that owes all this stuff, you're saying that there's a claim for this stuff, correct?
>  A:    Correct.
> Q:    And by this stuff, I'm talking about a claim for legal fees and costs.
> A:    Yes.
> Vallejo Dep. 78:15-23, Aug. 10, 2012, Exhibit 4.
>
> A:    We don't demand attorney's fees.
> Q:    Okay.

---

[3] Similarly, the March 12, 2012 correspondence to the Tsvetovats states "[a]s of this date, we are informed that *you owe* the Association **$1,782.96**, **representing $1,646.54** in assessments owed from January 1, 2012 through March 12, 2012, late fees, and accrued interest **and $136.42** in legal fees and costs claimed for this letter."

A:    It wouldn't be included in the demand.

Q:    Okay. And why is that?

A:    It's just the way I was trained, that we don't demand attorney's fees. They're not included in the demand. It's just assessments and late fees that we would include in the demand.

Q:    Okay. So attorney's fees wouldn't be in the letters saying "You would owe this amount" demanding the payment?

A:    No.

Lund Dep. 16:15-23 - 17:1-7, Aug. 10, 2012, Exhibit 7.

Q:    Okay. Do you see in there any request for legal fees?

A:    No. We just have legal fees that we're stating a claim for.

Lund Dep. 38:7-10, Aug. 10, 2012, Exhibit 8.

Q:    Okay. So when you open an account, you input a charge for your legal fees for opening the account; is that correct?

A:    Correct.

Q:    And that is included as part of this demand letter; is that correct?

A:    As claimed legal fees.

Martinez Dep. 28:3-9, Aug. 10, 2012, Exhibit 9.

However, the plain meaning of the word "claimed" and elementary arithmetic confirms exactly what Defendant and its employees deny – that Defendant improperly demanded payment for attorneys' fees in its correspondence to consumers. The plain meaning of the term "claim" which is commonly defined as "the assertion of an existing right; any right to payment or an equitable remedy, even if contingent or provisional." *See* Black's Law Dictionary 105 (3rd ed. 2006); *see also* Merriam-Webster Online Dictionary (defining a claim as "a demand for something due or believe to be due"). Moreover, Defendant's March 12, 2012 unequivocally provides "[a]s of this date, we are informed that *you owe* the Association **$1,782.96**, **representing $1,646.54** in assessments owed from January 1, 2012 through March 12, 2012, late fees, and accrued interest **and $136.42** in legal fees and costs claimed for this letter." *See* Exhibit 5 (emphasis added). Thus, Segan, Mason & Mason's insinuation blatantly disregards both the plain meaning of the term "claimed" and elementary arithmetic ($1,646.54 + $136.42 = $1,782.96).

8

      **2.**      **Segan, Mason & Mason, P.C. misrepresented that Memorandum of Liens could secure payment of their legal fees and costs.**

In addition copies of correspondence with the form Memorandum of Lien for the named

Plaintiffs are attached hereto as Exhibits 10 and 11.[4] The Memorandum of Lien is form

documents used firmwide and is regularly sent to consumers:

> Q:    . . .What else would you do in your role as collecting on an HOA account?
> A:    We would prepare liens.
> Q:    The memorandum of lien?
>  A:    Yes.
> Q:    And is that a form document?
> A:    The lien is, yes.  It's a form document within Word, not within the JST.
> Vallejo Dep. 40:21-23 – 41:1-5, Aug. 10, 2012, Exhibit 7.

> A:    I prepare warrants and liens.
> Q:    Is that a memorandum of lien?
> A;    Yes.
> Q:    And are there forms that you use for those?
> A:    Uh-huh.
> Q:    And are those forms used firm-wide?
> A:    Yes.
> Lund Dep. 23: 1-8, Aug. 10, 2012, Exhibit 8

> Q:    Where would you get that amount from?
> A:    That's on the form. And it's based on what our fees are for preparing the lien and then doing the release and the recording fees.
> Q:    Okay. So it's a flat fee that the firm charges of $275?
> A:    Uh-huh.
> Q:    So it doesn't change?
> A:    No.
> Lund Dep. 47:2-9, Aug. 10, 2012, Exhibit 8

> Q:    When you do a memorandum of lien, do you recall if there's a place on there for a flat amount of attorney's fees that are owed?
> A:    Yes.
> Q:    And how much is that?
> A:    $277.

---

[4] While Plaintiff Pritchard's Memorandum of Lien was not filed within the one year statute of limitations, it is include to highlight that the form document used is identical to the one filed against Plaintiffs' Maksim and Tatyana Tsvetovat's property.

> Q:    Okay, and as far as you know, that's on all the memorandums of
>        liens that you prepare?
> A:    Yes.
> Martinez Dep. 39:7-15, Aug. 10, 2012, Exhibit 9.
>
> Q:    And when you prepare the lien, is that a form you fill out?
> A:    Yes. They create the master lien. So where the deed book and page
>        of the first page of their declaration is listed in land records isn't
>        going to change, but the address – you know, the street address
>        will, but the city, state and Zip will not.
> Q:    And do you plug in the numbers of the monthly assessments that
>        are due and the amounts that are due?
> A:    Yes.
> Q:    Is there a charge for attorney's fees on the lien?
> A:    Yes.
> Q:    And how much is that?
> A:    $277.
> Q:    And is that on all the memorandum of lien forms?
> A:    Yes.
> Q:    And, as far as you know, are those forms used firmwide?
> A:    Yes. Well, specific to each association.
> DeAtley Dep. 37:1-23; 38:1-8, Aug. 15, 2012, Exhibit 12.

Regarding the Memorandum of Liens, a survey of approximately 20 other HOAs [5] - both

townhouse communities and condominiums- represented by Segan, Mason & Mason, P.C.

demonstrate this violation is identical. Copies of other Memorandum of Liens filed by Segan,

Mason & Mason, P.C. within the past year against other consumers have the identical violation

of securing attorney's fees and costs by the lien are attached hereto as Exhibit 12. All of these

---

[5] Unit Owners Association of Renaissance 2230; McLean Chase Condominium Unit Owners
Association; Burke Cove Condominium Unit Owners Association; Unit Owners Association of
Wilton House Condominium; Runnymeade Homeowners Association; Springfield Village
Homeowners Association; Unit Owners Association of McLean Hills; Pinecrest Office Park
Condominium; Unit Owners Association of Lillian Court at Tysons II; Unit Owners of McLean
Hills; Unit Owners Association of Burberry Court; Unit Owners Association of Regency at
McLean; Unit Owners Association of Bristow Center; Falls Church Gardens Condominium; Unit
Owners Association of Oakwood Commons at Burke Centre; Council of Co Owners of Skyline
Plaza Condominium Project; Council of Co Owner of Heritage Court Condominium; Council of
Co Owners of Terrance Townhouses of Annandale.

liens are forwarded in correspondence to the consumers substantially similar or identical to

Exhibit 2.

### 3.    Segan, Mason & Mason, P.C. has a uniform procedure that allows for the demand of interest that is not yet due.

Further, in addition to impermissibly demanding payment of attorneys' fees and costs,

Segan, Mason & Mason, P.C. also has a firm wide policy of failing to credit payments before

assessing interest and demanding payment of interest that is not yet due:

> Q:    So even if a garnishment court date has not yet occurred, you would still tell the homeowner they owe interest through the garnishment court date; is that correct?
> A:    Yes. That's what it's been calculated at.
> Q:    And is that how you are instructed to do it by your bosses or were you shown to do it that way?
> A:    I was shown.
> Q:    Okay. And, as far as you know, do the other collection paralegals do it the same way?
> A:    To the best of my knowledge.
>
> DeAtley Dep. 70:13-23 – 71:1, Aug. 15, 2012, Exhibit 12.
>
> Q:    And that includes interest through the garnishment date even if the interest hasn't yet accrued; is that correct?
> A:    Right. That's the full amount of the garnishment.
> Q:    And is that a firmwide policy, as far as you know?
> A:    That's how I was taught.
> Q:    Okay. Do you know if the other collection paralegals do it the same way?
> A:    To the best of my knowledge, yes.
>
> Deatley Dep. 73:15-23 – 74:1-4, Aug. 15, 2012, Exhibit 12.

### 4.    Segan, Mason & Mason, P.C. levies interest against consumers prior to crediting their payments.

Segan, Mason & Mason, P.C. not only demands payment for unaccrued interest, but it

also fails to properly credit consumers payments. For instance, the January 24, 2012

correspondence to the Tsvetovats states that they owe interest in the amount of **$1,122.55**, which

is the exact amount of interest that would accrue on a $6,340.66 principal, accruing interest at the

rate of eighteen percent for 359 days (from April 18, 2011, through April 11, 2012). However, Segan, Mason & Mason, P.C.'s interest calculation failed to account for payments made by the Tsvetovats on December 14, 2011, and January 11, 2012. Instead, Segan, Mason & Mason, P.C. credited the Tsvetovats' payments as if both amounts were paid on April 12, 2012. A proper interest calculation would reduce the principal as payments were made. Segan, Mason & Mason, P.C.'s paralegals confirmed this was a firmwide practice [when referencing Exhibit 3]:

> [Deposition Exhibit No. 5.]  BY MS. CAHOON KELLY:
> Q:    Ms. Vallejo, this is, I guess, the type of letter I was referring to where the amounts are in the middle of the letter.
> A:    This looks like a judgment notification letter.
> Q:    And do you know if there's a form for that one?
> A:    I think this is within Word.  I don't think this is within the database.
> Q:    Do you know if that Word document is, like, a form Word document that's also used?
> A:    It is something that we all use.  We are required to use the same form, yes.
> Q:    And who has that requirement?
> A:    The paralegals who draft this letter. We use the same form.
> Q:    And you indicated that you are required to use the same form.
> A:    Well yes, we should all use the same documentation and wording with all of our stuff.
> Vallejo Dep. 27:11-23 – 28:1-9, Aug. 10, 2012, Exhibit 7.
>
> Q:    And where you have the judgment interest at 18 percent from 4/18/11 to 4/11/12, you would just plug the dates in?
> A:    Yes.
> Q:    In the form?
> A:    Yes.
> Q:    And then after the judgment information, you see at the bottom there's payment scheme credited?
> A:    Yes.
> Q:    And is that how the form looks, where the payments are credited at the bottom after the judgment amount?
> A:    Yes, if there are payments, yes.
> Q:    Okay, and is the interest line always above the payment line as well in the form letter?
> A:    Yes.
> Q:    All right.
> Vallejo Dep. 29:12-23 – 30:1-6, Aug. 10, 2012, Exhibit 7.

Q:      Regarding the payment breakdown amounts, I see that similar to Exhibit 5, all the charges are assessed at the top and then the payments are credited at the bottom.

A:      Yes.

Q:      Is that in accordance with the forms of the law firm?

A:      Yes.

Vallejo Dep. 31:2-10, Aug. 10, 2012, Exhibit 7.

Q:      Is that how generally itemizations are done in your form letters, where you have the amounts due and then you do the crediting of the payments?

A:      Yes.

Q:      And where the interest is calculated above the totaled line – Do you see where the interest is calculated?

A:      Yes

Q:      --that's always above the crediting of the payments?

A:      Yes.

Q:      When you calculate the interest, do you do it by hand?

A:      By hand, you mean?

Q:      With a calculator, or do you have some sort of--"

A:      We use a calculator.

Martinez Dep. 38:18-23 – 39:1-12, Aug. 10, 2012, Exhibit 9.

Q:      Is it generally the amounts due, the costs, the garnishment costs and the interest would be above the line and the payments would be credited below the total?

A:      Well, yes, because I'm giving them a comprehensive of everything that is due and then showing them all the credits that have been applied to reduce the amount to the balance at the bottom that says, Total Balance Remaining.

DeAtley Dep. 52:15-23, Aug. 15, 2012, Exhibit 12.

Q: Okay. I just want to be clear with your testimony. So these payments – I guess it's this 343.07 and give payments of 487.55 – were not applied to the judgment principal prior to your calculating this 18 percent interest through April 11, 2012?

A. No. They were not applied to the principal.

DeAtley Dep. 62:18-23, 63:1-2, Aug. 15, 2012, Exhibit 12.

Both of these violations of the FDCPA are evidenced by Segan, Mason & Mason, P.C.'s January 24, 2012 correspondence to the Plaintiffs Maksim and Tatyana Tsvetovat. *See* Exhibit 3.

13

# III.
## ARGUMENT AND AUTHORITIES

### A.   The Class Certification Standards

"Rule 23(a) sets forth four basic requirements for any class action - numerosity, commonality, typicality, and adequacy."   *Central Wesleyan College v. W.R. Grace & Co.*, 143 F.R.D. 628, 636 (D. S.C. 1992), *aff'd* 6 F.3d 177 (4th Cir. 1993).   This Complaint in this lawsuit satisfies the 23(a) prerequisites.   Each Fed. R. Civ. P. 23(a) factor is considered in turn below.

Certification of an opt-out class for monetary damages under Rule 23(b)(3) further requires that: (1) questions of law or fact common to all class members predominate over individual issues, and (2) that the class action mechanism be superior to other available means of adjudicating the controversy. *See* FED. R. CIV. P. 23(b)(3).

Federal courts routinely certify claims that arise from standard form contracts, documents, and standardized conduct.[6] This principle of class action law applies well in the realm of FDCPA class actions as Congress has expressly provided a damages provision of the

---

[6] *See Bicking v. Law Offices of Rubenstein & Cogan,* No. 3:11cv78, 2011 U.S. Dist. LEXIS 48623 (E.D. Va. Nov. 3, 2011) (certifying an FDCPA class based on standard dunning letters sent to consumers); *Allapattah Servs., Inc. v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003) (certifying breach of contract claims where "all of the dealer agreements were materially similar and Exxon purported to reduce the price of wholesale gas for all dealers"); *Kliener v. First Nat'l Bank of Atlanta*, 97 F.R.D. 683, 692 (N.D. Ga. 1983) ("[C]laims arising from interpretations of a form contract appear to present the classic case for treatment as a class action, and breach of contract cases are routinely certified as such.") (citations omitted); *Smilow v. Sw. Bell Mobile Sys.*, 323 F.3d 32, 39–42 (1st Cir. 2003) (certifying breach of contract claim based on standard form mobile phone contract and alleged breach thereof in charging for incoming calls); *Zeno v. Ford Motor Co.*, 238 F.R.D. 173, 183 (W.D. Pa. 2006); *Steinberg v. Nationwide Mut. Ins. Co.*, 324 F.R.D. 67, 79 (E.D.N.Y. 2004) (certifying breach of contract claim involving materially similar automobile insurance contract and a Nationwide's common practice of taking "betterment" deductions on claims under those insurance contracts); *Winkler v. DTE, Inc.*, 205 F.R.D. 235, 243 (D. Ariz. 2001) (certifying breach of contract claim based on standard purchase contracts of used car dealer and overcharges of official registration fees).

statute that governs recovery in class action cases.[7] Here, the Rule 23 requirements are satisfied, making class certification appropriate.

**B.      Certification is Appropriate, As All Four Rule 23(a) Prerequisites are Satisfied**

   **1.      Numerosity is satisfied.**

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."   There is no set minimum number of potential class members that fulfills the numerosity requirement.  *See Holsey v. Armour & Co.*, 743 F.2d 199, 217 (4th Cir. 1984) (citing *Kelley v. Norfolk & Western Ry. Co.*, 584 F.2d 34 (4th Cir. 1978)); *see also Dameron v. Sinai Hosp. of Baltimore, Inc.*, 595 F. Supp. 1404, 1407-08 (D. Md. 1984) (stating that "[a] class consisting of as few as 25 to 30 members raises the presumption that joinder would be impractical"). Where the class numbers 25 or more, joinder  is  usually  impracticable. *Cypress v. Newport News Gen'l & Nonsectarian Hosp. Ass'n, 375* F.2d 648, 653 (4th Cir. 1967)  (finding that 18 class  members was sufficient to fulfill the numerosity requirement). The court may make common sense assumptions in order to find support for numerosity. *Evans v. United States Pipe & Foundry,* 696 F.2d 925, 930 (11th Cir. 1983); *Hewlett v. Premier Salons Int'l, Inc.,* 185 F.R.D. 211, at 215 (D. Md. 1997).

> Where class numerousness information is not available... it may be assumed that joinder is impracticable if common sense or judicial notice of facts would reasonably support that assumption. Similarly, where the exact size of the class is unknown, but it is general knowledge of common sense that it is large, the court will take judicial notice of this fact and assume joinder is impracticable.

A. Conti and H. Newberg, 3 *Newberg on Class Actions* § 7:22 (4th ed. 2002) (footnotes omitted).

---

[7] 15 U.S.C. § 1692k(a) and (b).

Here, Segan, Mason & Mason, P.C.'s admits to sending at least 2,223 letters in the form of Exhibit 1 to consumers in Virginia. *See* Exhibits 4 and 5. In addition, a random sampling of Fairfax County land records has identified at least 20 other HOAs whom Segan, Mason & Mason, P.C.'s has utilized the same form Memorandum of Lien. *See* Exhibit 13. Further, attached as Exhibit 14 is a list of thirty-seven homeowners in the Plaintiffs Tsvetovats' HOA against whose property Segan, Mason & Mason, P.C. filed a Memorandum of Lien. At all times within the past year, it was the Defendant's policy to forward correspondence to consumers with the form Memorandum of Lien. *See* Exhibit 2.

Regarding the Future Interest Class, this "Judgment Notification Letter," [Exhibit 3] Ms. Vallejo testified:

> [Deposition Exhibit No. 5.]  BY MS. CAHOON KELLY:
> Q:      Ms. Vallejo, this is, I guess, the type of letter I was referring to where the amounts are in the middle of the letter.
> A:      This looks like a judgment notification letter.
> Q:      And do you know if there's a form for that one?
> A:      I think this is within Word.  I don't think this is within the database.
> Q:      Do you know if that Word document is, like, a form Word document that's also used?
> A:      It is something that we all use.  We are required to use the same form, yes.
> Q:      And who has that requirement?
> A:      The paralegals who draft this letter. We use the same form.
> Q:      And you indicated that you are required to use the same form.
> A:      Well yes, we should all use the same documentation and wording with all of our stuff.
> Vallejo Dep. 27:11-23 – 28:1-9, Aug. 10, 2012, Exhibit 7.

Since Segan, Mason & Mason, P.C. filed at least 1,278 Warrants In Debt and 638 Garnishment Summons were filed within the past year, it is logical that at least 638 consumers received the "Judgment Notification Letter" which is the form identified in Exhibit 3.[8] The

---

[8] Plaintiffs requested these numbers in discovery, but Defendant has only provided numbers of consumer is sent "demand letters" to based on their JST database, not individuals who received

numbers are likely the same for the Future Interest Class as the future interest is generally calculated once a garnishment in filed. Regarding Exhibit 3, Ms. DeAtely testified that to the best of her knowledge all the other collection paralegals would calculate the interest through the date of garnishment as well. DeAtley Dep. 70:13-23 – 71:1, Aug. 15, 2012, Exhibit 12.

Given these facts, the Court should necessarily find that the Classes satisfy the requirements for numerosity.

### 2.     Commonality is satisfied because the Class claims arise from the application of identical statutory provisions to standardized conduct

"Rule 23(a)(2) requires that the court find that 'that there are questions of law or fact common to the class,'" but complete identity of fact or law questions is not necessary. *Central Wesleyan*, 143 F.R.D. at 636. "Commonality is satisfied where there is one question of law or fact common to the class, and a class action will not be defeated solely because of some factual variances in individual grievances." *Jeffreys v. Comm'n Workers of Am., AFL-CIO,* 212 F.R.D. 320, 322 (E.D. Va. 2003). The common issue must be such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 131 S. Ct. at 2454. Commonality is a liberal standard that cannot be defeated by the mere existence of some factual variances in individual grievances among class members. *Jeffreys*, 212 F.R.D. at 322.

The commonality requirement simply requires that the class present dispositive questions that will propel the case through the system *via* classwide proof. Much like the typicality requirement, commonality ensures that only plaintiffs capable of advancing the same factual and legal arguments are grouped together as a class. *Broussard v. Meineke Discount Muffler Shops,*

---

letters accompanying Memorandum of Liens, post judgment demands or demands during a garnishment proceeding which are form letters available in Word.

*Inc.*, 155 F.3d 331, 340 (4th Cir. 1998); *Fisher v. Va. Elec. & Power Co.*, 217 F.R.D. 201, 212 (E.D. Va. 2003).

To establish commonality, it is sufficient that Plaintiff allege that all class members received the same collection letter." *Swanson v. Mid Am, Inc.,* 186 F.R.D. 665, 668 (M.D. Fla. 1999). "The very definition of this class logically involves common questions, such as whether the subject letter violates 15 U.S.C. §1692g." *Marcarz v. Transworld Systems, Inc.,* 193 F.R.D. 46, 49 (D.Conn. 2000). Recently, in *Bicking v. Law Offices of Rubenstein & Cogan,* the Court found:

> Here, by definition, each putative class member received a dunning letter containing the same Verification Notice. *Cf. Talbott v. GC Svcs. Ltd. P'ship, 191F.R.D. 99, 103 (W.D. Va. 2000)* ("Mailing a standardized collection letter satisfies commonality and has been the basis for certification in similar cases."). The sole and dispositive legal question is whether the Verification Notice violates the FDCPA.

No. 3:11cv78, 2011 WL 5325674, * 2 (E.D. Va., Nov. 3, 2011).

In the case *sub judice*, core questions of law and fact common to the Classes are difficult to ignore:

- Whether Segan, Mason & Mason, P.C. is a debt collector;

- Whether Segan, Mason & Mason, P.C.'s policy to demand attorneys fees that have not yet been awarded was lawful;

- Whether Segan, Mason & Mason, P.C.'s policy to demand unearned future interest was lawful;

- Whether Segan, Mason & Mason, P.C.'s policy to demand interest calculated on principal balances that did not reflect credited payments was lawful; and

- If such conduct was not lawful, did it violate the FDCPA.

Critically, these common questions can be resolved with reference to standardized conduct and documents, making them particularly susceptible to class treatment. *In re Checking Account*, 2012 WL 3265093, at *4 ("The commonality element is generally satisfied when a plaintiff alleges that '[d]efendants have engaged in a standardized course of conduct that affects all class members.'"). Since the claims of all class members derive from the from letters, correspondence enclosing form memorandum of liens and firm wide methods and procedures implemented by Segan, Mason & Mason, P.C., commonality's low threshold is easily satisfied for each Class.

### 3.   Typicality is met because Plaintiffs' claims are typical of those of the members of the Classes they propose to represent

As the Court and the Fourth Circuit have explained, "Thus, the appropriate analysis of typicality 'involve[s] a comparison of the plaintiffs' claims or defenses with those of the absent class members. To conduct that analysis, [the District Court] begin[s] with a review of the elements of [the plaintiff's] *prima facie* case and the facts on which the plaintiff would necessarily rely to prove it." *Soutter v. Equifax Info. Services, LLC*, 3:10CV107, 2011 WL 1226025 (E.D. Va. Mar. 30, 2011) (quoting *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006)). The typicality test involves analyzing whether other class members have suffered the same or similar injury, whether the action is based upon conduct that has been repeated on other individuals besides the named plaintiffs, and whether the defendant's same course of conduct has caused injury to other class members. *In re Checking Account*, 2012 WL 3265093, at *5. Commonality and typicality tend to merge because both of them "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that

the interests of the class members will be fairly and adequately protected in their absence." *Wal-Mart*, 131 S. Ct. at 2551 n.5.

Here, Plaintiffs' claims are not merely coextensive with the claims of Class Members, they are *identical* to them. Plaintiffs' claims arise out of Segan, Mason & Mason, P.C.'s conduct of violating the FDCPA through automatic, formulaic processes that violate the FDCPA requirements in their execution. Segan, Mason & Mason, P.C. uniformly demanded payment of legal fees that were not allowed under the law; it uniformly added attorneys' fees and costs to amounts claimed due in memorandum of liens that were sent to consumers; it uniformly demanded payment of interest that was not yet due; and it has firm wide procedures that calculates interest prior to crediting payments received from consumers. This conduct, if proven to violates the FDCPA provisions as alleged, was the same to all Class Members as it was to Plaintiffs. Under such facts, typicality is satisfied. *See id.* (concluding typicality met, explaining that plaintiffs' and class members' "claims arise out of the same conduct and essentially the same factual and legal bases"); *In re Checking Account*, 3265093, at *7 (finding typicality met where plaintiffs challenged banks' uniform policy of rearranging debit transactions to cause class members to incur more overdraft fees).

### 4.   Adequacy of representation is met because Plaintiffs have no antagonism to Class Members and their Counsel is willing and able to prosecute this case

The final component of Rule 23(a) requires that the "representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). This prerequisite is met when: "(i) the class representatives have no interests conflicting with the class; and (ii) the representatives and their attorneys will properly prosecute the case." *In re Checking Account*, 2012 WL 3265093, at *7. A class representative must be part of the class and possess the same interest and suffer the same injury as the class members.   *E. Tex. Motor Freight Sys. Inc. v.*

20

*Rodriguez*, 431 U.S. 395, 403 (1977) (citing *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216 (1974)). Since the Plaintiffs and class members seek their actual and statutory damages as a result of Segan, Mason & Mason, P.C.'s unlawful form collection letters and memorandum of liens. Given the identical nature of the claims between the Plaintiffs and the class members, no potential exists for conflicting interests in this action.

Here, there exist no conflicts between Plaintiffs and absent Class Members. It certainly cannot be said that Plaintiffs suffered a different injury than did Class Members—all injuries are identical under the FDCPA's statutory scheme and all of Segan, Mason & Mason, P.C.'s conduct was uniform and automatic. By their declarations submitted in support of this Motion, Plaintiffs have set out their commitment to being involved in and zealously pursuing this lawsuit, for the benefit of absent Class Members and to the detriment of themselves if necessary. *See* Exhibit 15, T. Tsvetovat Decl. ¶ 8; Exhibit 16, M. Tsvetovat Decl. ¶ 8; Exhibit 17; Pritchard Decl. ¶ 8.

Plaintiffs have also aligned themselves with Counsel that are qualified to prosecute this case in favor of the Classes. Plaintiffs' lead Counsel have effectively handled numerous consumer-protection and complex class actions, typically as lead or co-lead counsel. *See* Exhibit 18, Sept. 13, 2012, Declaration of Leonard A. Bennett ¶10.   As Judge Payne recently stated, "the Court finds that Soutter's counsel [Bennett] is qualified, experienced, and able to conduct this litigation. Counsel is experienced in class action work, as well as consumer protection issues, and has been approved by this Court and others as class counsel in numerous cases." *Soutter v. Equifax Info. Services, LLC*, 3:10CV107, 2011 WL 1226025 (E.D. Va. Mar. 30, 2011).  Further, the present team proposed as class counsel has recently been commended by this Court *in Conley v. First Tennessee Bank*, Case No. 1:10-cv-1247 (E.D. Va. 2010) for its handling of another consumer class action. Specifically, Judge Ellis stated "I think you're to be commended. Most

21

class counsel are a little greedy sometimes.  But this fee is anything but that. … Again, I wish that more would settle as quickly and as sensibly and as economically as you-all have settled this. Thank you…. And that thank you comes not from me personally, but from the system, from the judiciary. We're tied up with lots of class actions, lots of squabbling, and it's refreshing to see one resolved so promptly. …." See Settlement Hr'g Tr. 8:20-22; 10:14-22, August 11, 2011.

## C.     The Classes Also Satisfy the Requirements of Rule 23(b)(3), Making Certification Appropriate

### 1.     Common questions predominate because the Classes' claims arise from a common nucleus of fact and involve overriding common questions

"Whereas commonality requires little more than the presence of common questions of law and fact, Rule 23(b)(3) requires that 'questions of law or fact common to the members of the class predominate over any questions affecting only individual members.' " *Thorn v. Jefferson–Pilot Life Ins. Co.,* 445 F.3d 311, 319 (4th Cir. 2006) (internal citation omitted) (quoting Fed. R. Civ. P. 23(b)(3)). The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Grant Thornton,* 368 F.3d at 362 (internal citation and quotation marks omitted).

The U.S. Supreme Court explained "predominance is a test readily met in certain cases alleging consumer or securities fraud…" *Amchem Products, Inc. v. Windsor, supra* 521 U.S. at 625.  In this case, all class members were sent the same form letters by Segan, Mason & Mason, P.C. that used false representations, deceptive means and/or unfair and unconscionable means to collect or attempt to collect a debt. Cases dealing with the legality of standardized documents and practices are generally appropriate for resolution by class action because the document is the focal point of the analysis. *Swanson v. Mid Am, Inc., supra* at 668. Because of the standardized nature of the Segan, Mason & Mason, P.C.'s conduct, common questions predominate.

22

### a.   Plaintiffs' Letter Class claims are subject to common proof

The proposed Letter Class alleges violations of the FDCPA's prohibition against the false, deceptive or misleading representations and/or unfair and unconscionable means to attempt to collect a debt, includes the following elements of proof:

1.   Is Segan, Mason & Mason, P.C. a "debt collector" within the meaning of the FDCPA who was attempting to collect a consumer debt?

2.   If so, did Segan, Mason & Mason, P.C. send correspondences to consumers attempting to collect attorney's fees that had not been awarded by a court?

3.   When sending such correspondences to consumers did Segan, Mason & Mason, P.C. use unfair and unconscionable means and/or make false, deceptive or misleading representations about the character and amount of the debt, the compensation it may lawfully receive and/or that it would pursue additional collection activities against the consumer if they failed to pay the attorney's fees.

As demonstrated above, these elements are subject to common, generalized proof because the correspondences are form documents. *See* Exhibit 1. In fact, the amount of legal fees is pre-printed within each form letter and will not vary by case or account. On the first two points, it cannot reasonably be disputed that Segan, Mason & Mason, P.C. is not a debt collector that sends consumers correspondences demanding payment for attorney's fees that have not been awarded by a court, since their employees and form documents concede the same. *See* Exhibit 1. In fact, the correspondences already have the amount of legal fees in the form letters. On point three, this can be shown through the documents themselves. Segan, Mason & Mason, P.C. concedes that consumers do not owe the attorney's fees. Exhibit 1. Whether Plaintiffs or class members were misled is not an element of this cause of action. "The test is the capacity…to mislead; evidence of actual deception is unnecessary." *United States v. Nat'l Fin. Servs.,* 98 F.3d 131, 139 (4th Cir. 1996). The question is not whether the plaintiffs were deceived or misled, but rather whether an unsophisticated consumer would have been misled." *Beattie v. D.M.*

*Collections, Inc.,* 754 F.Supp. 383, 392 (D. Del. 1991). *Cf. Morgan v. Credit Adjustment Bd.,* 999 F. Supp. 803, 805 (E.D. Va. 1998) (holding that FDCPA liability does not require showing that consumer read or receive the dunning letter). Thus, since no individualized proof whatsoever is needed to establish Plaintiffs' claims regarding the Letter Class, the predominance requirement is readily met.

        **b.**      **Plaintiffs' Memorandum of Lien Class claims are subject to common proof**

The proposed Letter Class alleges violations of the FDCPA's prohibition against the false, deceptive or misleading representations and/or unfair and unconsciousable means to attempt to collect a debt, includes the following elements of proof:

1.      Is Segan, Mason & Mason, P.C. a "debt collector" within the meaning of the FDCPA who was attempting to collect a consumer debt?

2.      If so, did Segan, Mason & Mason, P.C. send correspondences to consumers that included memorandum of liens that listed a charge for attorney's fees and costs on the lien?

3.      When sending such correspondences to consumers did Segan, Mason & Mason, P.C. use unfair and unconsciousable means and/or make false, deceptive or misleading representations about the character and amount of the debt, the compensation it may lawfully receive and/or that it would pursue additional collection activities against the consumer if they failed to pay the attorney's fees and costs?

On this claim, generalized proof will again be employed to establish Segan, Mason & Mason, P.C.'s liability. As to point one, Segan, Mason & Mason, P.C. again is indisputably a debt collector under the FDCPA. Any aspect of point two can by review of Exhibit 2 and after review of a sample of memorandum of liens that were filed in Fairfax County Circuit Court land records containing the identical provision in the lien. *See* Exhibit 13. No doubt, as Segan, Mason & Mason, P.C. has their collection process set up in a formulaic manner, a review of these correspondences sent to consumers will again provide sufficient, generalized proof that Segan,

Mason & Mason, P.C. sent the identical correspondences to numerous consumers. Finally, as set forth previously, number three can be shown simply with generalized, classwide review of the documents that were sent to the consumers. Again, the predominance requirement is satisfied here.

        **c.**     **Plaintiffs' Future Interest Class  and Payment Crediting Class claims are subject to common proof**

1.     Is Segan, Mason & Mason, P.C. a "debt collector" within the meaning of the FDCPA who was attempting to collect a consumer debt?

2.     If so, did Segan, Mason & Mason, P.C. send correspondences to consumers that included demand for payment of interest that had not yet accrued?

3.     Or, did Segan, Mason & Mason, P.C. send correspondences to consumers where they calculated interest prior to crediting payments?

4.     When sending such correspondences to consumers did Segan, Mason & Mason, P.C.  use unfair and unconscionable means and/or make false, deceptive or misleading representations about the character and amount of the debt, the compensation it may lawfully receive and/or that it would pursue additional collection activities against the consumer if they failed to pay the attorney's fees and costs?

As set forth above, there are simply no individualized issues in play in this case. Segan, Mason & Mason, P.C.'s status as a debt collector and whether they are subject to the FDCPA is undisputed. All that need be evaluated for this claim, is whether Segan, Mason & Mason, P.C.'s standardized practice and forms violate the FDCPA. The proof is solely based on a review of the documentation and is readily ascertainable on the face of the documents. *See* Exhibit 3. Since Segan, Mason & Mason, P.C.'s procedures are formulaic and uniform across the law firm, what occurred as to one Class Member likely occurred as to all. Again, it is difficult to imagine a case in which predominance is more clearly shown.

        **2.**     **A class action is the superior method of litigating because individual litigation is not feasible and the claims are manageable**

In the final step of its analysis for class suitability, the Court must determine whether a class action is superior to other methods for the fair and efficient adjudication of the controversy. FED. R. CIV. P. 23(b)(3); *see Amchem*, 521 U.S. at 615.  Superiority " 'depends greatly on the circumstances surrounding each case,' but '[t]he rule requires the court to find that the objectives of the class-action procedure really will be achieved.' " *Stillmock v. Weis Markets, Inc.*, 385 F. App'x 267, 274 (4th Cir. 2010) (quoting 7A Wright, Miller & Kane, *supra*, § 1779). "In determining whether the answer to this inquiry is to be affirmative, the court initially must consider what other procedures, if any, exist for disposing of the dispute before it. The court must compare the possible alternatives to determine whether Rule 23 is sufficiently effective to justify the expenditure of the judicial time and energy ... and to assume the risk of prejudice' " to putative class members not before it. *Id.; Soutter v. Equifax Info. Services, LLC*, 3:10CV107, 2011 WL 1226025 (E.D. Va. Mar. 30, 2011).

Efficiency is the primary focus in determining whether a class action is the superior method for resolving the controversy presented. *Talbott v. GC Servs. Ltd. P'ship*, 191 F.R.D. 99, 106 (W.D. Va. 2000) (*citing Eovaldi v. First Nat'l Bank*, 57 F.R.D. 545 (N.D. Ill. 1972)). In examining these factors, courts properly consider the "inability of the poor or uninformed to enforce their rights, and the improbability that large numbers of class members would possess the initiative to litigate individually." *Triad v. Logan Furniture Mart, Inc.*, 503 F.2d 1161, 1164 (7th Cir. 1974). "In determining superiority, courts also consider the anticipated amount of recovery for each plaintiff. Class actions are particularly appropriate where multiple lawsuits would not be justified because of the small amount of money sought by the individual plaintiffs." Advisory Committee Note to 1996 Amendment to Rule 23; *see In re Checking Account*, 2012 WL 1134483, at *11 (finding superiority met where "[n]early all of the class members in this

26

case have claims that are so small that it would cost them much more to litigate an individual case than they could ever hope to recover in damages . . .”). Thus, the class mechanism permits a large group of claimants to have their claims adjudicated in a single lawsuit.

FDCPA statutory damage cases, like this one, are ideally suited for class certification, because of the uniform, but limited, recoveries sought under a complex statute. *See Bush v. Calloway Consol. Group River City, Inc.*, No. 3:10-cv-841-J-37MCR, 2012 WL 1016871, at *11 (M.D. Fla. March 26, 2012) (“Courts routinely find class resolution superior in consumer protection actions...”). “The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.” *Id.* (quoting *Amchem*, 521 U.S. at 617). Federal courts have long regarded “consumer claims” as “particularly appropriate for class resolution.” *Id.*; *see Amchem*, 521 U.S. at 625; *In re Mexican Money Transfer Litig.*, 267 F.3d 743, 747 (7th Cir. 2001); *Perry v. FleetBoston Fin. Corp.*, 229 F.R.D. 105, 113 (E.D. Pa. 2005).

Rule 23(b)(3) was designed for situations such as this, where the amount in controversy for any individual claimant is small, but injury is substantial in the aggregate. Here, Plaintiffs seeks their actual damages and statutory damages per violation of no more than $1,000 for each class and subclass member. Likewise, the absence of any competing classes or other individual claims suggests that without the certification of this case as a class, it is unlikely that the class members would obtain any form of relief. Class Members are likely unaware that or their FDCPA rights or that Segan, Mason, & Mason, P.C. violated those rights in the first place. Unless the Court certifies these Classes, then, it is highly probable that the Class Members will receive no relief of any kind.

# IV.
## <u>CONCLUSION</u>

For all the aforementioned reasons, Plaintiffs respectfully request that the Court grant their Motion and certify the Classes defined above.

Respectfully submitted,

MAKSIM TSVETOVAT, TATYANA TSVETOVAT, and CHRISTOPHER LEE PRITCHARD, *on behalf of themselves and all similarly situated individuals*

_____/s/_____
Leonard A. Bennett, Esq. (VSB #37523)
Susan M. Rotkis, Esq., (VSB #40693)
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Boulevard, Suite 1-A
Newport News, Virginia 23601
(757) 930-3660 - Telephone
(757) 930-3662 – Facsimile
lenbennett@clalegal.com
srotkis@clalegal.com

Kristi C. Kelly, Esq., (VSB #72791)
J. Chapman Petersen, Esq., (VSB #37255)
Scott A. Surovell, Esq., (VSB #40278)
Surovell Isaacs Petersen & Levy PLC
4010 University Dr., Suite 200
Fairfax, VA 22030
703-251-5400 - Telephone
703-591-9285 – Facsimile
Email: kkelly@siplfirm.com
Email: jpetersen@siplfirm.com
Email: ssurovell@siplfirm.com

*Attorneys for Plaintiff*

### ***CERTIFICATE OF SERVICE***

I hereby certify that on this __13th__ day of September, 2012, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

William D. Bayliss, Esquire (VSB No. 13741)
bbayliss@williamsmullen.com
Brendan D. O'Toole, Esquire (VSB No. 71329)
botoole@williamsmullen.com
Joseph R. Pope, Esq. (VSB No. 71371)
jpope@williamsmullen.com
WILLIAMS, MULLEN, CLARK &DOBBINS, P.C.
Williams Mullen Center
200 South 10th Street, PO Box 1320
Richmond, VA 23218-1320
Telephone: 804.420.6000
Facsimile: 804.420.6507
Counsel for Defendant

<div style="margin-left:40%">

By: ___/s/_____
Kristi Cahoon Kelly, Esq., (VSB #72791)
Surovell Isaacs Petersen & Levy PLC
4010 University Dr., Suite 200
Fairfax, VA 22030
703-251-5400 - Telephone
703-591-9285 – Facsimile
Email: kkelly@siplfirm.com
*Attorney for Plaintiff*

</div>